The STATE of Texas et al.

v.

HOUSTON LIGHTING & POWER COMPANY et al.

No. 1600.

Court of Civil Appeals of Texas, Corpus Christi.

Oct. 16, 1980.

Rehearing Denied Nov. 13, 1980.

Douglass D. Hearne, Douglass D. Hearne & Associates, Austin, Margaret Garner Mirabal, Cox, Roady & Dawson, Houston, for appellants.

Jon C. Wood, Matthews, Nowlin, Macfarlane & Barrett, San Antonio, Hugh Rice Kelly and Richard K. Willard, Baker & Botts, Houston, Jerry L. Harris, City Atty., City of Austin, Richard C. Balough, Austin, James F. McKibben, Kleberg, Dyer, Redford & Weil, Corpus Christi, for appellees.

OPINION

BISSETT, Justice.

This is a suit for a declaratory judgment to determine whether the Cities of Austin and San Antonio are liable for ad valorem taxes on their undivided interests in the South Texas Project, a nuclear–fueled electric generating plant being constructed in Matagorda County, Texas, and owned by the City of Austin, the City of San Antonio, Houston Lighting and Power Company and Central Power and Light Company. The State of Texas, for itself and on behalf of Matagorda County and other taxing authorities within the county, filed suit against the aforesaid owners and certain trustees who claimed a security interest in the project to establish liability for such taxes and to collect taxes for the years 1974–1978. Palacios Independent School District intervened and aligned itself with the State. The defendants defended on the grounds that their properties were exempt from ad valorem taxation under both the Constitution and the laws of Texas.

All parties filed motions for summary judgment. The trial court granted the motions of the defendants and denied the motions of the plaintiff and the intervenor. Judgment was rendered that the "plaintiff and the intervenor take nothing by their suit" and that "all relief prayed for by the defendants is hereby granted." The plaintiff and the intervenor have appealed. We affirm.

The plaintiff State and the intervenor Palacios Independent School District henceforth will be referred to as "appellants" or by name. The defendants City of Austin and City of San Antonio, and their trustees, will hereafter be referred to either by name or as "appellee cities." The defendants Houston Power and Light Company and Central Power and Light Company will hereafter be referred to either as "HP & L" and "CP & L," respectively, or as "appellee private utilities."

The controlling question to be answered in disposing of this appeal is whether the interests of the Cities of Austin and San Antonio in the properties comprising the South Texas Project are exempt from ad valorem taxation under Article XI, Section 9, of the Constitution.[1] We answer that question in the affirmative. Therefore, it is not necessary that we determine whether such interests are exempt from taxation under Tex.Rev.Civ.Stat.Ann. art. 7150, § 4 (1960).

Article XI, Section 9, provides for automatic exemption of properties falling within its purview. It, in relevant part, provides:

"The property of counties, cities and towns, owned and held only for public purposes, such as public buildings and the sites therefor, fire engines and the furniture thereof, and all property used, or intended for extinguishing fires, public grounds and all other property devoted exclusively to the use and benefit of the public shall be exempt . . . from taxation, . . ."

The framers of the Constitution contemplated that Article XI, Section 9, applies only to property owned by counties, cities and towns, and operates to exempt their properties, provided such properties are devoted exclusively to a public use. See *Leander Ind. Sch. Dist. v. Cedar Park Water Sup. Corp.*, 479 S.W.2d 908 (Tex.Sup. 1972).

The material facts are not in dispute. Planning for the construction of a nuclear steam electric generating facility, known as the "South Texas Project" and hereinafter referred to as the "Project," commenced several years ago. The Project is located wholly within Matagorda County. The site comprises approximately 12,000 acres. An additional 898 acres is devoted to use for railroad lines and transmission corridors. Construction of the Project was in progress at the time of trial. The percentage shares of undivided ownership in the Project are: HL & P (30.8%); CP & L (25.2%); City of Austin (16.0%); and City of San Antonio (28.0%).

The relationship between the four participants in the Project is governed by a Participating Agreement. A 60% vote is required to determine conclusively what shall be purchased, spent or otherwise done with respect to the Project. Management is by a committee made up of one representative from each participant. The Project manager for construction, operation and maintenance of construction power lines is CP & L. The Project manager for everything else is HL & P. The Agreement provides for mandatory arbitration in dispute between participants regarding matters not exclusively within the jurisdiction of the management committee. In the event of default by any participant, the Agreement provides for acquisition of the defaulting participant's share by the non–defaulting participants.

Each participant will have its own facilities at the plant site for transmitting separately its share of the electricity generated. The costs and expenses relating to common facilities, generating facilities, and nuclear

---

1. All references to the "Constitution" are to the Texas Constitution.

fuel are borne proportionally by each participant.

The appellee cities are home rule cities. Each acquired its title to its share of the Project property subject to the Participating Agreement. Whenever either city wishes to sell any part of its interest it must give, with certain exceptions which are not relevant to this appeal, several months' notice to the other participants, which have a right of first refusal. The right of partition is expressly waived. Each participant acquired its undivided interest in the land upon which the plant is being built by a conveyance. All covenants in the conveyances run with the property and inure to the benefit and burden of all participants. These covenants are several and not joint. There are no reverter provisions in any of the conveyances.

The electric energy generated and received by each participant in accordance with its respective ownership will be transmitted and sold to the public by each participant individually through its own utility electric distribution system. The participants cannot sell electricity for the joint benefit of all, and none are liable for any cost attributable to another's interest.

For the tax years in question (1974–1978), all taxes concerning the Project have been assessed against each participant individually for its undivided interest in the properties comprising the Project. The two appellee private utilities, HL & P and CP & L, have paid their combined 56% of the total taxes assessed against their undivided interest in the subject property. The appellee cities have refused to pay the taxes which have been assessed against their interests. The electrical generation and distribution system of each appellee city is revenue producing. Both appellee cities plan to furnish their own residents, as well as residents of other cities and persons outside their respective boundaries, with electricity generated at the Project. Neither is permitted to furnish electricity to anyone in Matagorda County.

We now consider the appellants' complaint that the trial court erred in not holding that the Project, as such, is a legal entity in the nature of a partnership or joint venture which is, itself, liable for 100% of the taxes assessed against the involved properties.

The trial court did not treat the Project as a separate legal entity. The judgment referred to the Project only as the name given to the electric generating facility.

■ A partnership in Texas is an association of two or more persons to carry on as co–owners a business for profit. Tex. Rev.Civ.Stat.Ann. art. 6132b, § 6(1) (1970). A joint venture is in the nature of a partnership, but it usually is limited to one particular enterprise. *North Texas Lumber Co. v. Kaspar*, 415 S.W.2d 470 (Tex.Civ. App.–Dallas 1967, writ ref'd n. r. e.). The burden of proof is upon the person seeking to establish a partnership or joint venture, and the intention of the parties is the real test. *Holman v. Dow*, 467 S.W.2d 547 (Tex. Civ.App.–Beaumont 1971, writ ref'd n. r. e.). No single fact may be stated as a complete and final test of partnership. Each case must rest on its own particular facts in determining the presence or absence of the attributes of a partnership relation. *Davis v. Gilmore*, 244 S.W.2d 671 (Tex.Civ.App.–San Antonio 1952, writ ref'd).

■ Concerning the question of partnership in this appeal, there is no evidence of "an association of two or more persons to carry on as co–owners a business for profit as required by the Uniform Partnership Act. Art. 6132b § 6(1), supra. There is no proof that the participants intended to share any profits as co–owners of the Project, which would be necessary to establish a partnership. *Strawn Nat. Bank v. Marchbanks*, 74 S.W.2d 447 (Tex.Civ.App.– Eastland 1934, writ ref'd).

■ Regarding the question of joint venture, the essential elements are: 1) mutual right of control; 2) community of interest; 3) agreements to share profits as principals; and 4) agreement to share losses, costs and expenses. *Brown v. Cole*, 155 Tex. 624, 291 S.W.2d 704 (1956); *Chandler v. Herndon*,

450 S.W.2d 703 (Tex.Civ.App.–Corpus Christi 1970, writ ref'd n. r. e.). A joint venture does not exist if any one of the requisite elements thereof is missing. *Brown v. Cole*, supra; *Fry v. Shaw*, 508 S.W.2d 142 (Tex.Civ.App.–Dallas 1974, writ ref'd, n. r. e.); *Tex–Co. Grain Co. v. Happy Wheat Growers, Inc.*, 542 S.W.2d 934 (Tex. Civ.App.–Amarillo 1976, no writ). In the instant case, there is no agreement to share profits.

There is no summary judgment evidence in the case at bar that the four participants in the Project intended to establish and maintain a partnership or joint venture. All that the participants are entitled to receive are their respective shares of the electrical energy generated by the facilities. Any profit (or loss) on the sale of electricity by each participant will be derived solely from its separate costs, expenses and rate structure.

■■■ The four participants in the properties in question own their undivided interest therein as tenants in common. Each undivided interest in the affected property with respect to taxation must be separately assessed. *Hager v. Stakes*, 116 Tex. 453, 294 S.W. 835 (Tex.Sup.1927); *Bashara v. Saratoga Independent School Dist.*, 163 S.W.2d 631 (Tex.Com.App.1942, opinion adopted). The mere fact that the participants are tenants in common is insufficient to establish a partnership. Tex.Rev.Civ. Stat.Ann. art. 6132b, § 7(2) (1970).

■■■ The "South Texas Project" itself is nothing more than the name given to the facility by the participants who, together, are cooperating in the financing, construction and operating of a nuclear power plant, which, according to the provisions of the Participating Agreement, is not a business or enterprise for mutual profit to be shared communally. The adoption of an assumed name, as a convenient mode of designating all the owners, in transactions relating to common property, does not change the legal relationship of the several owners with respect to the common property, from a tenancy in common to one of partnership or joint venture. *Scanlan v. Gulf Bitulithic*

*Co.*, 44 S.W.2d 967 (Tex.Com.App.1932, holding approved).

■■■ Neither a partnership nor a joint venture exists in this case. The Project itself is not a legal entity, and is not liable for the assessment or payment of any taxes against any of the properties comprising the Project.

We next consider the appellants' claims that the trial court erred in granting the appellees' motions for summary judgment and in denying the appellants' motions for summary judgment for the reason that the interests of the appellee cities in the Project are not exempt from taxation under Article XI, Section 9. They argue that the *ownership* and character of *use* of the appellee cities' interests are so encumbered by the contractual agreements (the Participating Agreement) with the appellee private utilities that the interests of the appellee cities are not held by them for purposes which are essentially public nor are such interests devoted exclusively to the use and benefit of the public, in the senses required by the Constitution.

The Supreme Court first addressed itself to the issue of taxation of properties owned by a city in *Galveston Wharf Co. v. City of Galveston*, 63 Tex. 14 (1884). In that case, the Court held that wharf property owned by the City of Galveston was exempt under Article XI, Section 9. Concerning the ownership and character of the use to which the wharf was put, the Court said:

> It is property held only for purposes essentially public, and may be said to be devoted exclusively to the use and benefit of the public .... It is a property which all persons and vessels have the right to use, under proper regulations, and without the use of which the business of the city could not be conducted. That compensation is received for its use does not withdraw from it its public character.

The next case which bears directly on the issue of whether property owned by a city is exempt from taxation under Article XI, Section 9, is *Corporation of San Felipe de Austin v. State*, 111 Tex. 108, 229 S.W. 845

(1921). The question before the Court was whether certain lands owned by the Town of San Felipe and used by its residents for grazing purposes and as a source and supply of firewood was subject to taxation by the State and County. The Supreme Court held that it was not because the land was "devoted exclusively to a public use."

Another significant decision dealing with the question of exemption of public property of a city from taxation is *A. & M. Consolidated Ind. School Dist. v. City of Bryan*, 143 Tex. 348, 184 S.W.2d 914 (1945). In that case, the City of Bryan owned and operated a rural electrification system with about 315 miles of lines, 38 miles of which were within the boundaries of plaintiff school district and wholly outside the city limits of Bryan. The City used the system to supply electricity to its own inhabitants and also to the residents of surrounding rural territory, including at least one incorporated city. For this service, the City charged and received money. The Court noted that the revenue received by the City from the sale of electric power went into the public treasury of the City and was "available for use only by the political subdivision for public purposes." In particular, the Court observed:

> "In determining whether or not public property is used for a public purpose the test appears to be whether it is used primarily for the health, comfort and welfare of the public .... It is not essential that it be used for governmental purposes .... It is sufficient if it be property which all of the public has a right to use under proper regulations .... The fact that charges are made or compensation is received for its use does not withdraw it from its public character, provided such charges are an incident to its use by the public and the proceeds received for its use inure to the benefit of the political subdivision."

The Court, in holding that the subject property was exempt from taxation, stated: "..." [T]he Constitution authorizes the exemption of the property if it is 'used for public purposes,' and does not restrict the right to property so used by the inhabitants of the political subdivision owning the property .... In our opinion, the particular location of the property within the State has nothing to do with the right to the exemption, nor does the right to the exemption depend on the residence of those of the public who enjoy the use thereof. It is the fact that the property is owned by the public and is used for the welfare of the public of some portion of the State that entitles it to the exemption."

The appellants rely, in the main, upon *Satterlee v. Gulf Coast Waste Disposal Auth.*, 576 S.W.2d 773 (Tex.Sup.1978). There, Gulf Coast, a conservation and reclamation district, sought a judicial declaration that a waste treatment and disposal complex which it had built and was operating for the benefit of several private concerns was exempt from ad valorem taxation. Gulf Coast had acquired the legal title to the property in question through a transaction represented by two instruments, a Facilities Agreement and a Deed. The Agreement was executed by Gulf Coast along with the several private concerns which were to be served by the complex. Under the provisions of the Agreement, Gulf Coast had a duty to expand the complex, which was to be financed by publicly sponsored bonds, and also had a duty to restrict use of the complex to that of the participants unless there was unanimous consent otherwise. Gulf Coast could not transfer control or operation of the complex without the consent of the other participants. The Deed to Gulf Coast provided that the property in question would revert to the grantor if, and whenever, waste treatment operations were curtailed by Gulf Coast.

According to the Supreme Court, Gulf Coast's title was encumbered by the Agreement to the point that the complex, in fact, existed primarily for the use and benefit of the private industry participants, although Gulf Coast held legal title to the property. The Court held that Gulf Coast did not have exclusive ownership of any property held only for public purposes or devoted exclusively to the use and benefit of the public.

*Satterlee* is factually different from the case at bar. The question there was whether certain property owned by Gulf Coast, which is a conservation and reclamation district, was exempt from taxation under Tex.Rev.Civ.Stat.Ann. Art. 7150, § 4. In the case at bar, the controlling question is whether the properties in question owned by the appellee cities, which are municipal corporations, are exempt under Article XI, Section 9, of the Constitution. In *Satterlee*, a 100% exemption from taxation as to the waste disposal complex itself was sought, although little, if any, of the facilities were available for use by the public; in the case at bar, the appellee cities claim an exemption from taxation only for their undivided interests in the properties comprising the Project, and all of the electricity to be generated and delivered to them is available for use by the public. In *Satterlee*, Gulf Coast, the owner of the legal title to the complex had to expand the facilities at the request of private industry; in the case at bar, the appellee cities have no duty to expand the facilities at the request of the private utilities. In *Satterlee*, Gulf Coast, the "owner," could not contract to provide waste disposal services to others without the consent of private industry; in the case at bar, the appellee cities, the "owners," will receive their share of electricity and may sell the same without the consent of the appellee private utilities. In *Satterlee*, the legal title of Gulf Coast to the properties in question was encumbered by the Facilities Agreement for the use and benefit of the private industries to the extent that Gulf Coast held legal title only so long as it used the facility for the treatment of industrial waste, and upon cessation of such use, the title reverted to the grantor in the Deed; that situation does not exist in the case at bar. In *Satterlee*, Gulf Coast, in fact, acquired substantially less than exclusive ownership of the waste disposal complex; in the case at bar, the ownership of the undivided interests in the Project was exclusive as to each of the appellee cities. The decision in *Satterlee* does not control the decision in this case.

Appellants further argue that there is no exclusive ownership and use of the property in question for purposes of Article XI, Section 9, because some of the electricity generated and delivered to the appellee cities will be used for the benefit of nonresidents of San Antonio and Austin. We consider this fact to be inconsequential. For the purposes of Article XI, Section 9, city property is "held only for public purposes" and "devoted exclusively to the use and benefit of the public" irrespective of whether it benefits only the residents of the city, or benefits others as well. It is the fact that the property is *owned* by the public and is *used* primarily for the health, comfort and welfare of the public of *some* portion of the State that entitles it to tax exemption. *A. & M. Consolidated Ind. School Dist. v. City of Bryan*, supra; *City of New Braunfels v. City of San Antonio*, 212 S.W.2d 817 (Tex.Civ.App.–Austin 1948, writ ref'd n. r. e.).

Regarding the character of the use to which the electricity to be generated by the Project is to be put by the appellee cities, it is settled law that the generation and distribution of electricity by a municipal corporation is a public purpose. *A. & M. Consolidated Ind. School Dist. v. City of Bryan*, supra; see also *State, Etc. v. Tex. Mun. Power Agency*, 565 S.W.2d 258 (Tex. Civ.App.–Houston [1st Dist.] 1978, no writ). This is so regardless of whether it is revenue–producing or commercial in nature, so long as some portion of the public has a right to use the same under proper regulations and the revenue resulting from its use inures to the public benefit of the affected city. *Galveston Wharf Co. v. City of Galveston*, supra; *A. & M. Consolidated Ind. School Dist. v. City of Bryan*, supra; *City of New Braunfels v. City of San Antonio*, supra.

In *Lower Colorado River Authority v. Chemical B. & T. Co.*, 144 Tex. 326, 190 S.W.2d 48 (1945), it was said:

"That the property in question is revenue–producing because used to generate electricity to be sold to the public does not mean that it is not held only for

public purposes nor that it is any the less devoted exclusively to the use and benefit of the public. That precise question was foreclosed in *Galveston Wharf Co. v. City of Galveston* . . . ."

■ The fact that the Project is located outside the city limits of the appellee cities is immaterial to the determination of whether the interests of the appellee cities in the properties in question are exempt from taxation under Article XI, Section 9. See *City of Dallas v. State*, 28 S.W.2d 937 (Tex.Civ.App.–Fort Worth 1930, writ ref'd); *State, Etc. v. Tex. Mun. Power Agency*, supra, at page 273.

The appellants also contend that the dissent in *Lower Colorado River Authority*, supra, as a result of the decision in *Leander Ind. Sch. Dist. v. Cedar Park Water Sup. Corp.*, supra, "has become the law." We disagree. The holding by the majority in *Lower Colorado River Authority* has never been disapproved or limited by any later decision by the Supreme Court.

Unquestionably, the City of Austin owns an undivided 16.0% in the properties in question, and the City of San Antonio owns an undivided 28.0% interest therein. Those properties are held by the appellee cities for public purposes and are devoted exclusively to the use and benefit of the public. The fact that the properties will be revenue–producing and the fact that the properties are located outside the corporate limits of the appellee cities do not divest such properties of their public character, use or purpose.

■ We hold that the undivided interests of the City of Austin and the City of San Antonio in the South Texas Project are exempt from ad valorem taxation under Article XI, Section 9, of the Constitution. We have considered all of appellants' points of error, and they are overruled.

The judgment of the trial court is AFFIRMED.