**Charles F. THOMAS, et al, Appellants,**

v.

**AMERICAN NATIONAL BANK, Appellee.**

No. 13-84-253-CV.

Court of Appeals of Texas, Corpus Christi.

Feb. 28, 1985.

Rehearing Denied April 25, 1985.

F. Edward Barker, Corpus Christi, William T. Green, III, Green, Downey, Patterson & Schultz, Houston, George G. Brin, Brin & Brin, Corpus Christi, for appellants.

Richard A. Hall, Gary, Thomasson, Hall & Marks, Corpus Christi, for appellee.

Before KEITH [1], UTTER and KENNEDY, JJ.

## OPINION

KEITH, Justice (Retired).

This is an appeal from a summary judgment granted against appellants, Charles F. Thomas (Thomas) and B.J. McCombs (McCombs) and in favor of appellee, American National Bank (American Bank).

American Bank brought suit against Southwestern Cinema, A Joint Venture (Southwestern Cinema) to collect on a $360,000.00 promissory note executed by Celso Gonzalez (Gonzalez) on behalf of Southwestern Cinema. American Bank also sued the individual partners of Southwestern Cinema: Thomas; McCombs; and PGR Investment Company (PGR), a partnership composed of Charles R. Porter, Jr. (Porter), Rick Rogers (Rogers), Terrell W. Dahlman (Dahlman) and Gonzalez. The trial court granted the Bank's Motion for

---

**1.** Associate Justice, Court of Appeals, Ninth Supreme Judicial District (Ret.), sitting by designation. *See* Art. 1812, as amended.

Summary Judgment against Southwestern Cinema, McCombs, Thomas, PGR, Porter, Gonzalez, Rogers and Dahlman, jointly and severally, for the sum of $430,544.08, together with attorney's fees of $9,325.00.

Appellants McCombs and Thomas challenge the summary judgment on their position that they had transferred their partnership interests in Southwestern Cinema and, thus, ceased to be partners prior to the time Gonzalez executed the note to American Bank. The remaining partners do not challenge the correctness of the summary judgment to the extent that the amounts owed American Bank remain a joint and several obligation of all the partners, including McCombs and Thomas.

■ The material facts are not in dispute. Southwestern Cinema is a joint venture organized by the above parties for the purpose of purchasing and distributing two motion pictures.[2] Pursuant to the Joint Venture Agreement, Gonzalez was designated as the "Managing Venturer" with express authority to borrow up to $500,000.00 to finance the venture. The distributive shares of the venturers are as follows: McCombs—33⅓%; Thomas—33⅓%; and PGR owning the remaining 33⅓% collectively. All profits and losses for each fiscal year of the joint venture were allocated among the venturers in proportion to their respective distributive shares. The initial funding for the joint venture was ultimately consolidated into a loan of $360,000.00 from Parkdale State Bank (Parkdale Bank) in Corpus Christi, Texas. Thomas and McCombs acknowledged that they were individually liable as partners for the Parkdale Bank indebtedness. In fact, in May of 1982, Thomas and McCombs each paid $5,125.48 to Southwestern Cinema as their share of an interest payment of $15,376.00 made to Parkdale Bank on Southwestern Cinema's note.

When the Parkdale Bank note became due, the partnership "preferred to continue financing." Accordingly, on May 21, 1982, Gonzalez, acting as the "Managing Venturer," negotiated the subject loan from American Bank for the continued financing of Southwestern Cinema. The proceeds of the loan (i.e., $360,000.00) were deposited in Southwestern Cinema's Bank account · at American Bank, and a check was in turn issued to discharge the partnership's debt to Parkdale Bank (i.e., $367,101.37).

The promissory note to American Bank matured on May 21, 1983. When the partnership failed to timely pay the indebtedness due, the Bank gave notice and demanded payment of the note from Southwestern Cinema and its partners, individually. American Bank subsequently filed its motion for summary judgment to recover on the note, asserting that no genuine issue of fact exists and the Bank was entitled to summary judgment against the defendants, jointly and severally, for all sums due, including principal, interest, attorney's fees and post-judgment interest.

A copy of the promissory note in question was attached to the Bank's original petition and was incorporated by reference in the motion for summary judgment. The note was executed to American Bank on May 21, 1982 in the amount of $360,000.00 with interest at the rate of 2% in excess of the prime rate, and was to be repaid on or about May 21, 1983. The note is signed, "Southwestern Cinema, AJV, by Celso Gonzalez, Partner." An identical copy of the promissory note was attached to the Gonzalez deposition as Gonzalez Exhibit 2.

Included as part of the Bank's motion for summary judgment was the affidavit of Richard Hall, the attorney representing American Bank in the collection of the note. Hall testified to the matter of attorney's fees which American Bank would be entitled to recover if the Bank was entitled to a summary judgment.

---

**2.** The Joint Venture was organized in 1980 pursuant to the Texas Uniform Partnership Act, article 6132b, TEX.REV.CIV.STAT.ANN. (Vernon 1970). A joint venture is a distinct legal entity in the nature of a partnership, but it usually is limited to one particular enterprise. *State v. Houston Lighting & Power Co.,* 609 S.W.2d 263 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

The appellee Bank also attached the affidavit of Frank Adams, in support of its summary judgment motion. Adams, President of American Bank, testified that "since the original date of the note and subsequent to the date of the filing of this suit, Southwestern Cinema has made a payment of $26,000.00 on the note." The payment was received by American Bank on December 30, 1983 and was applied to accrued interest. Adams testified that, as of March 2, 1984, the total amount due on that day (principal and unpaid interest) was $423,363.82. He further testified that the daily interest on the $360,000.00 principal is $128.22 and that, for every day after March 2, 1984 that the note was not paid, the unpaid interest would increase by that amount.

In their response to the Bank's motion for summary judgment, Thomas and McCombs contended that they were not obligated to repay any part of the loan because Thomas had entered into an agreement with Gonzalez in which he (Gonzalez) agreed to personally assume their partnership indebtedness in return for their partnership interests in the assets of Southwestern Cinema. They further contended that the testimony of Thomas and McCombs raised a fact issue as to whether they were partners in Southwestern Cinema at the time the Bank made the loan in question. Additionally, Thomas and McCombs pled in their response "the affirmative defenses of estoppel and negligence."

The summary judgment proof also consists of various depositions and attached exhibits which were filed for the trial court's consideration of and reliance upon in ruling on the Bank's motion for summary judgment. American Bank contends that the deposition testimony further establishes as a matter of law that McCombs and Thomas, as original partners in Southwestern Cinema, were jointly and severally liable for the partnership indebtedness to American Bank because "they had not taken the action necessary to dissolve or effectively transfer their interests in the partnership before the partnership incurred the debt."

McCombs, by his deposition, in summary, testified: 1) that he became a partner in Southwestern Cinema in 1980; 2) that he understood that, as a partner of the joint venture, he was personally liable for one-third of the indebtedness to Parkdale Bank; 3) that he agreed that Thomas was to handle the entire partnership arrangement for both of them; 4) that he did not have any discussions with American Bank before the loan was made to Southwestern Cinema; 5) that he did not have any conversations with the remaining partners (Gonzalez, Rogers, Porter or Dahlman) expressing a desire to terminate and dissolve the partnership; 6) that any communications which would have effected a dissolution of the partnership or which constituted an agreement to transfer assets to Gonzalez in return for his assumption of liabilities would have come from Thomas; 7) that, sometime in 1982, Thomas told him that they "were out" and that "Celso is taking our place"; and 8) that he would consider himself to be obligated for one-third of the partnership liability to American Bank but for Thomas' representations that Gonzalez had agreed to take over their interests and obligations in Southwestern Cinema.

Thomas, in his deposition, in summary, testified: 1) that he acquired one-third interest in Southwestern Cinema in 1980; 2) that early in 1982, he told Gonzalez that he and McCombs "wanted out of the deal"; 3) that, prior to the date the Parkdale Bank debt matured, he and Gonzalez orally agreed that he and McCombs would transfer their equity in the partnership to Gonzalez and that Gonzalez personally would assume their two-thirds shares of the partnership indebtedness; 4) that within three or four months after Gonzalez agreed to relieve him and McCombs, he received his personal guaranty back from Parkdale Bank showing that loan paid; 5) that there was no written agreement or instrument prepared to verify that he and McCombs had conveyed or assigned their interests to Gonzalez; 6) that no instrument was prepared which obligated Gonzalez for a two-

thirds share of the partnership debts; 7) that he did not disclose the alleged agreement to other members of the partnership (i.e., Porter, Rogers and Dahlman) until many months after he was informed that Gonzalez executed the note to American Bank on behalf of Southwestern Cinema; 8) that he essentially relied on his attorneys (i.e., Gonzalez' law firm) to follow through with any legal work necessary to terminate their partnership interests; and 9) that his first knowledge of the American Bank loan was several months after it was executed by Gonzalez.

Gonzalez, in his deposition, in summary, testified: 1) that he is a partner in PGR which is comprised of four partners of his law firm, and which collectively owns the remaining one-third share of Southwestern Cinema; 2) that, on May 21, 1982, he (as managing partner of Southwestern Cinema) executed a promissory note to American Bank for $360,000.00, which was used to "pay off Parkdale Bank"; 3) that, on the date the note to American Bank was executed, none of the partners of Southwestern Cinema had withdrawn; 4) that he did not remember and did not think there was ever a conversation between himself and Thomas in which they agreed that Thomas and McCombs would no longer participate in that venture; 5) that he never agreed with Thomas that he would be personally responsible for their two-thirds share of the liabilities; 6) that, on or about December ·2, 1982 (i.e., approximately seven months after the debt to American Bank was incurred), he and Thomas had a conversation concerning a security agreement to American Bank; 7) that, during that conversation, Thomas did not say anything to the effect that he and McCombs were no longer partners or that they did not consider themselves responsible for any of the liabilities of Southwestern Cinema; 8) that, prior to May 21, 1982, he discussed making the loan with Frank Adams (President of American Bank); 9) that, pursuant to Adams' request, he contacted the partners, including Thomas, to inform them that they were "going to pay off Parkdale and move the loan to American," and that the Bank wanted financial statements of all the partners; 10) that, subsequently, Thomas' and McCombs' financial statements were mailed directly to the Bank; 11) that, at the time American Bank funded the repayment of the Parkdale Bank loan, he had not received any notice by Thomas or McCombs, or anyone acting on their behalf, that they were no longer partners of Southwestern Cinema; and 12) that Thomas has "never" told him that he considered himself out of the partnership.

Porter, in his deposition, in summary, testified: 1) that he is a partner in PGR, which owned 33⅓ percent of Southwestern Cinema; 2) that he was told by Gonzalez that Southwestern Cinema was negotiating a loan from American Bank; 3) that, at no time up to May 21, 1982 (i.e., the date of the note in question), did Thomas or McCombs tell him that they were no longer participants in Southwestern Cinema; 4) that he executed a personal guarantee of the note to American Bank on the belief that Thomas and McCombs were still partners; 5) that, because of his joint and several liability on the note and his right to contribution of their pro rata shares, he would not have guaranteed the note had he known that Thomas and McCombs were claiming they were no longer partners; 6) that, sometime in the fall of 1982, he called Thomas to complete the necessary documentation of the loan (i.e., guarantees and assignments), and was then told by Thomas that "he didn't intend to sign the guarantee"; and 7) that, later that fall, he met with Thomas and McCombs and was told for the first time by Thomas and McCombs' accountant that "there's been a subsequent agreement to this (i.e., joint venture agreement) and we're no longer, Mr. Thomas, Mr. McCombs, are no longer members to that joint venture."

Frank Adams, in his deposition, in summary, testified: 1) that all negotiations for the loan were handled by Gonzalez on behalf of Southwestern Cinema; 2) that, prior to and while arranging the loan, he did not discuss the loan with any partners other than Gonzalez; 3) that he was provided

with a copy of the joint venture agreement prior to making the loan;[3] 4) that he did not talk to Thomas or McCombs to verify their relationship with Southwestern Cinema; 5) that he relied on the representations of Gonzalez as acting on their behalf according to the joint venture agreement; 6) that, prior to maturity of the loan (i.e., November 1982), he talked to Thomas regarding the fact that their (Thomas' and McCombs') guarantees had not been forwarded to the Bank; 7) that Thomas initially said he would not give the personal guarantee; 8) that Thomas later said he would honor his share of the loan and that McCombs "would take his proportionate share of the debt" if the Bank would assist in the collection of money owed Southwestern Cinema and sale of properties and would apply the money to the note; 9) that, about the time the note matured in May, 1983, Thomas told him that he was not going to pay on the loan because he "didn't owe it" and that he (Thomas) said he had some papers to prove he didn't owe it, which Adams has never seen; 10) that McCombs stated that he would agree to do whatever Thomas was going to do about the loan; and 11) that, since the loan matured, Gonzalez responded to Thomas' and McCombs' allegations that "they were having differences of opinion regarding their liability on the loan."

Also included as part of the summary judgment evidence were copies of the "Joint Venture Agreement," as identified by the parties in their deposition testimony.[4] It is undisputed that this joint venture agreement contained the following provision, as set forth in Article XI:

A. This agreement and the provisions hereof shall extend to and be binding upon the Venturers, the successors and assigns of each; provided, however, *no Venturer shall sell, transfer, assign, mortgage or convey any of his or its interest in the Venture and/or his share of distributions of the Venture as set forth in Article VI without the express written consent of the other Venturers,* and in the event the other Venturers agree, in writing, to the sale, transfer, assignment, mortgage or conveyance by the other Venturer of all or any part of his or its interest herein, then such sale, transfer, assignment, mortgage and conveyance shall be made expressly subject to this Agreement, if then in existence, and shall expressly provide for the assumption of obligations herein of the Venturer selling, transferring, assigning, mortgaging and conveying such interest by its Assignee. (Emphasis added.)

In their sole point of error, appellants contend that the trial court erred in granting appellee's motion for summary judgment against them because the evidence raises a fact issue as to whether they were partners on the date American Bank made the loan to Southwestern Cinema.

▬▬ In passing upon this point raised on appeal, we are guided by the familiar rules concerning summary judgments. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. *Wesson v. Jefferson Savings & Loan Ass'n,* 641 S.W.2d 903 (Tex.1982); *Town North Bank v. Broaddus,* 569 S.W.2d 489 (Tex.1978); *Manges v. Astra Bar, Inc.,* 596 S.W.2d 605 (Tex.Civ.App.—Corpus Christi 1980, no writ). All elements of a cause of action or

---

3. It appears that he had not received a copy of the agreement showing all the signatures of the partners until several months after May 21, 1982.

4. Two copies of the joint venture agreement were attached to the deposition of Adams (Adams Ex 1 and Adams Ex 2). Adams Ex 1 is signed by all the partners. It indicates, however, that Rogers signed the agreement on February 14, 1983 and that Dahlman signed the agreement on February 1, 1983. Adams Ex 2 is a copy of the same agreement that was not signed by any of the partners.

Also attached to the deposition of Gonzalez was a copy of the joint venture agreement (Gonzalez Exhibit 1), which is signed by McCombs, Thomas, Porter and Gonzalez. Rogers' and Dahlman's signatures do not appear on this copy.

defense must be conclusively proven as a matter of law. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). In a summary judgment, unlike an ordinary trial on the merits, the Court must view all the evidence in favor of the non-moving party. *Fluellen v. Young*, 664 S.W.2d 776 (Tex.App.—Corpus Christi 1983, no writ). In deciding whether or not there is a disputed fact issue precluding summary judgment, evidence favorable to the non-movants will be taken as true. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d 589 (Tex.1975). Every reasonable inference must be indulged in favor of the non-movants and any doubts resolved in their favor. *Wilcox v. St. Mary's University of San Antonio*, 531 S.W.2d at 592–593.

Thomas and McCombs contend that American Bank has failed to meet its burden of proof to establish as a matter of law that they were partners, citing *State v. Houston Lighting & Power Co.*, 609 S.W.2d 263 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.). Appellants' reliance on this case and others which hold that "the question of the existence of a partnership is one of fact," and the "burden of proof is upon the person seeking to establish a partnership or joint venture" is misapplied. *Id.* at 267; *Tex-Co Grain Co. v. Happy Wheat Growers, Inc.*, 542 S.W.2d 934 (Tex.Civ.App.—Amarillo 1976, no writ). It is undisputed that all the participants intended to establish and maintain a joint venture for the purchase and distribution of two motion pictures. Further, the summary judgment proof clearly established that Thomas and McCombs were original partners to the Southwestern Cinema Joint Venture. By their own testimony, Thomas and McCombs were jointly and severally liable for the partnership debts incurred prior to May 21, 1982.

■ A partnership, once proved, presumptively continues until the contrary appears. *Woodruff v. Bryant*, 558 S.W.2d 535 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). The determinative issue in this appeal, then, is whether the appellee

Bank has established as a matter of law that, on May 21, 1982, when Southwestern Cinema borrowed $360,000.00 from American Bank, Thomas and McCombs had neither dissolved the partnership nor terminated their participation by an effective transfer of their interests to Gonzalez.

■ There is no doubt that the joint venture agreement gave Gonzalez the express authority to execute the promissory note to American Bank on behalf of Southwestern Cinema. Even assuming that Thomas and McCombs had no prior knowledge of the American Bank loan, Gonzalez was acting within the scope of and in furtherance of the partnership. Every partner is an agent of the partnership and his actions bind the partnership. *See Corinth Joint Venture v. Lomas & Nettleton Financial Corp.*, 667 S.W.2d 593 (Tex.App.—Dallas 1984, writ dism'd); TEX.REV.CIV. STAT.ANN. art. 6132b § 9(1) (Vernon 1970). American Bank, as a third party doing business with the partnership, may hold the partnership liable as a legal entity for any debts created in reliance on such partnership. Each member of the partnership is personally or severally liable for the partnership debts. "This personal liability of a partner continues until the partnership is *legally dissolved or until a withdrawing partner or partners gives notice of such withdrawal to third parties dealing with members of the partnership as partners.*" *Texaco, Inc. v. Wolfe*, 601 S.W.2d 737 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) (emphasis added).

■ Thomas and McCombs do not contend that they dissolved Southwestern Cinema before the American Bank debt was incurred by the partnership. At common law, a partner could dissolve the partnership by giving "explicit notice" to the other partners. *Green v. Waco State Bank*, 78 Tex. 2, 14 S.W. 253 (1890). Article 6132b, § 31(1)(b) codifies this common law rule by providing that dissolution can be caused by the "express will" of any partner. *Woodruff v. Bryant*, 558 S.W.2d at 539. Both Thomas and McCombs testified that they did not expressly communi-

cate their desire to "get out of the deal" to any other partners, namely Porter, Rogers and Dahlman. Absent communication or notice of a desire to dissolve or terminate the partnership, there can be no dissolution by the "express will" of a partner. *Woodruff v. Bryant*, 558 S.W.2d at 540–42.

Concerning the proposed fact issue of withdrawal from the partnership, Gonzalez denied that he and Thomas entered into a personal agreement in which he agreed to assume their partnership indebtedness in return for their partnership interest in the assets of Southwestern Cinema. However, for summary judgment purposes, the Court must accept as true the testimony of Thomas. Thomas and McCombs contend that this private agreement between the two partners constituted a transfer of interests such that they ceased to be partners prior to the time Gonzalez refinanced the partnership's debts with the loan from American Bank. Even assuming, without deciding, that this agreement was sufficient to consummate a transfer of interest which would materially alter the composition of the partnership, such action would not operate to relieve Thomas and McCombs of their liability for the partnership debt to American Bank. A private agreement between partners will not limit their liability to third parties without first giving notice of such withdrawal to third parties. *See Misco-United Supply, Inc. v. Petroleum Corp.*, 462 F.2d 75 (5th Cir.1972); *Brewer v. Big Lake State Bank*, 378 S.W.2d 948 (Tex.Civ.App.—El Paso 1964, no writ).

The summary judgment proof establishes that American Bank relied on Thomas' and McCombs' continued participation in Southwestern Cinema as represented in the Joint Venture Agreement in making the loan to the partnership. Adams testified that he relied on the representations of Gonzalez, who was authorized to act on behalf of the partnership according to the written agreement. Adams further testified that the Bank received the requested financial information (i.e., financial statements) from Thomas and McCombs.

It is undisputed that there was no observance by McCombs and Thomas of the provision of Article XI A of the Joint Venture Agreement which provided that . . . "no venturer shall sell, transfer, assign, mortgage or convey any of his or its interests in the Venture and/or his share of distributions of the Venture as set forth in Article VI without the express written consent of the other venturers. . . ." It is also undisputed that, as of May 21, 1982, neither McCombs or Thomas had communicated with or given notice to any of the remaining partners of PGR or American Bank that they had sold or transferred their interest in the partnership to Gonzalez. Further, there had been no publication of such a change in ownership of the partnership in Nueces County, Texas.

The summary judgment proof clearly shows that Thomas and McCombs had not effectively withdrawn or terminated their participation in Southwestern Cinema before May 21, 1982. In this respect, we agree with the Bank's contention that any such agreement between Thomas and Gonzalez concerning the transfer of interests in the partnership, without the express consent of the other partners, merely amounted to an executory agreement.

Reading the summary judgment proof of both parties in light of the standard previously set out, we now hold that American Bank, as movant, has conclusively established that no genuine issue of material fact exists that McCombs and Thomas, as partners in Southwestern Cinema, were jointly and severally liable for the partnership indebtedness to American Bank.

In their response to the Bank's motion for summary judgment, appellants Thomas and McCombs alternatively raised "the affirmative defenses of estoppel and negligence" as grounds for preventing the granting of summary judgment.[5] In sup-

---

5. The following elements are necessary to estab-    lish an equitable estoppel: there must exist a

port of these defenses, appellants alleged in their response 1) that Adams admitted that he relied solely on the representations by Gonzalez prior to making the loan to Southwestern Cinema; 2) that Adams failed to verify personally with Thomas and McCombs their relationship with Southwestern Cinema; 3) that Adams had an unsigned copy of the joint venture agreement in his file prior to making the loan, but he did not recall if he had the signed copy prior to that date; 4) that Adams did not ask for Thomas' or McCombs' guaranty until months after he made the loan; and 5) that the handling and documentation of this loan by Adams was "at best, suspect."

Appellants' response also refers to an affidavit of "Joel Taylor, Chairman of the Board of Directors and Chief Executive Officer of BancTEXAS Westheimer, an expert in lending," which "sets forth Mr. Taylor's opinion that Adams did not follow reasonable and customary lending practices in the Southwestern Cinema loan."

■ The Taylor affidavit does not appear in the record before us. Further, an affidavit containing information which is a unilateral and subjective determination of the facts or an opinion as to such facts is not competent summary judgment evidence. *See Inwood Forest Community Improvement Assoc. v. R.J.S. Development Co., Inc.,* 630 S.W.2d 751 (Tex.Civ. App.—Houston [1st Dist.] 1982, no writ); *Wise v. Dallas Southwest Media Corp.,* 596 S.W.2d 533 (Tex.Civ.App.—Beaumont 1979, no writ).

■ Appellants, as the parties opposing the summary judgment, had the burden of coming forward with proof which raises a fact issue with respect to their affirmative defense. *Brownlee v. Brownlee,* 665 S.W.2d 111 (Tex.1984); *Nichols v. Smith,* 507 S.W.2d 518 (Tex.

false representation or concealment of material facts; it must have been made with knowledge, actual or constructive, of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the

1974); *Manges v. Astra Bar, Inc.,* 596 S.W.2d at 610. Pleadings do not constitute summary judgment proof. *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). The mere pleading of an affirmative defense, without proof, will not defeat an otherwise valid motion for summary judgment. *Kehoe v. Lambert,* 633 S.W.2d 576 (Tex.App.—Houston [14th Dist.] 1982, writ ref'd n.r.e.); *Hudson v. Arkansas Louisiana Gas Co.,* 626 S.W.2d 561 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.).

■ Appellants' mere allegations and pled facts were insufficient to raise a fact issue with respect to the affirmative defense of estoppel and, thus, defeat appellee's valid motion for summary judgment.

Appellants' point of error is overruled, and the judgment of the trial court is Affirmed.

Opinion ordered published.

party to whom it was made must have been relied on or acted on it to his prejudice. *Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929 (1952).

Generally, the defense of ordinary negligence is not an affirmative defense. *See* TEX.R.CIV.P. 94.