**Al NEGRINI, et al., Appellants,**

v.

**PLUS TWO ADVERTISING, INC., Appellee.**

**No. 01–84–0416–CV.**

Court of Appeals of Texas, Houston (1st Dist.).

June 13, 1985.

Rehearing Denied Aug. 15, 1985.

David F. Beale, Houston, for appellants.

Ross Citti, Mark D. Estle, Mills, Shirley, McMicken & Eckel, Houston, for appellee.

Before JACK SMITH, LEVY and DUNN, JJ.

## OPINION

JACK SMITH, Justice.

This is a suit on a sworn account for advertising services rendered by the appellee, Plus Two Advertising, Inc. A non-jury trial resulted in judgment for the appellee in the sum of $21,245.00, plus prejudgment interest, attorney's fees, and costs. The appellants assert 45 points of error on ap-

peal, 34 of which attack the sufficiency of the evidence and the other 11 assert no pleadings or findings to support the judgment, error in the admission of evidence, and as a matter of law appellants are entitled to judgment.

Prior to July 7, 1982, J.L. Negrini, Helen Negrini and Al Negrini (father, mother and son respectively) and Earl Israel had discussions concerning doing business under the name of "The Sea Breeze Restaurant." As a result of these conversations, on July 7, 1982, an assumed named certificate was signed and filed by the respective parties in the Galveston County Courthouse.

In August of 1982, Al Negrini and Earl Israel met with Barclay Lawder, president of the appellee company, and indicated to him that they were interested in the appellee doing a complete advertising package for a new restaurant, The Sea Breeze, which they planned to open. At that time, they indicated to Mr. Lawder that they were planning to build the new restaurant together with J.L. and Helen Negrini, Al's parents. Thereafter, the appellee prepared and presented advertising proposals to Al Negrini and Earl Israel. All of the proposals were not accepted but after having received prior approval of either Earl Israel or Al Negrini, or both, the appellee prepared for the restaurant a logo, two menus, a billboard layout, a membership card, and artwork for outdoor posters and outdoor bulletin structures. The detailed advertising proposal for these items was submitted by the appellee to Earl Israel and Al Negrini on or about October 14, 1982.

On October 25, 1982, articles of incorporation were signed for the new restaurant. The certificate of incorporation for the new restaurant, The New Sea Breeze, Inc., was issued on November 17, 1982. On December 1, 1982, this corporation filed an assumed name certificate which certified that it was to do business as the "Sea Breeze Restaurant."

On January 4, 1983, construction of the restaurant building began, and on January 13, 1983, the appellee mailed its first invoice to the "Sea Breeze Restaurant."

This invoice enumerated the work performed and specified the charges for such work; however, it did not show when the work was commenced or when it was completed. This invoice, along with invoices sent in February and March of 1983, was paid by check by "The New Sea Breeze Inc. Restaurant" corporate account.

Thereafter, the appellees continued to send invoices to the Sea Breeze Restaurant in April, May, June, and July. The corporate account made three further payments, the last being in July 1983, which left a balance due of $21,245.00. When no further payments were received by September 14, 1983, the appellee sent a final notice stating, "If payment is not received within five days, action will be taken to collect."

In October 1983, appellee filed the current lawsuit in which it named Earl Israel and the three Negrinis as defendants. In November 1983, The New Sea Breeze Inc. filed a petition in the federal bankruptcy court for relief under Chapter 11. The restaurant apparently closed for a short period of time but was later opened under the same name, Sea Breeze Restaurant, by a corporation named "Negrini's Inc." This corporation had Helen and J.L. Negrini as the majority stockholders.

The appellee then filed its first amended petition complaining of the three Negrinis and Negrini's Inc. Earl Israel was omitted as a defendant in this amended petition. The petition was filed as a sworn account and in the alternative alleged contractual liability against Al Negrini, and in the further alternative unjust enrichment and quantum meruit.

The three Negrinis filed a joint sworn answer in which they denied that they were the owners and operators of The Sea Breeze Restaurant at any time relevant to the lawsuit, averred that the account which was the foundation of the appellee's petition was not just or true, and generally denied the allegations set forth in the appellee's petition.

After a non-jury trial, the court entered a joint and several judgment against the

three Negrinis. A take-nothing judgment was entered for the defendant, Negrini's Inc.

In its findings of fact, the trial court found that beginning in July and August of 1982, the three Negrinis and Earl Israel were a general partnership and transacted business as "The Sea Breeze Restaurant"; that at the special instance and request of each of the Negrinis, appellees provided advertising services to the Negrinis commencing in July 1982; that the services provided were accepted by the Negrinis; that the charges for the services were the usual, customary, and reasonable charges; and that when the appellees extended credit to the Negrinis in July and August 1982, they were an unincorporated business entity. The court also found that when the Negrinis incorporated the business, without changing the firm name, they failed to give notice as required by article 1302–2.02 and appellees had no actual knowledge that "The Sea Breeze Restaurant" had been incorporated. The trial court further made findings concerning demand, attorney's fees, damages, interest and unjust enrichment.

■ As heretofore stated, in 34 of their 45 points of error the appellants assert that there is no evidence or insufficient evidence to support the trial court's findings of fact. It has long been established in Texas that the proper standard of review on "no evidence points" regarding findings of fact is that the appellate court "must view the evidence in its most favorable light in support of the trial court's findings, considering only the evidence and inferences which support the findings and rejecting the evidence and inferences contrary to the findings." *Lakeway Co. v. Leon Howard, Inc.*, 578 S.W.2d 163, 165 (Tex.Civ.App.— Tyler), *writ ref'd n.r.e. per curiam*, 585 S.W.2d 660 (Tex.1979); *accord, In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

■ It is equally well established in Texas that the proper standard of review regarding allegations of "insufficient evidence" is that the appellate court must weigh all the evidence to determine whether such findings are so against the weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate, supra;* "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex.L.Rev. 361, 366–68 (1960).

■ In applying the standard set forth in *In re King's Estate* to our present case, it becomes manifest from the record that Earl Israel and Al Negrini were the only two parties that contacted and dealt with the appellee in obtaining the services that were performed by the appellee. We therefore hold that there is no evidence to support the trial court findings (1) that the appellee performed its services at the special instance of Helen and J.L. Negrini; (2) that the prices charged were in accordance with an agreement between appellee and Helen and J.L. Negrini; (3) that the appellees' services were accepted by Helen and J.L. Negrini with knowledge that the services were performed for them and they were expected to pay for the services; and that (4) appellees had business dealings with Helen and J.L. Negrini in July and August 1982.

■ The appellants' points of error 4, 5, 6, 7, 10, 11, 20 and 21 are sustained insofar as they apply to Helen and J.L. Negrini. However, insofar as these same points of error pertain to Al Negrini, they are overruled because there is sufficient evidence in the record to support the trial court's finding that Al Negrini was present with Earl Israel in July and August 1982, when the initial contacts and conversations with appellee were made. The record also reveals that Al Negrini approved some and rejected some of the appellee's work, and that he knew that the appellees expected to be paid for the work which he and Earl Israel had authorized.

■ Having established that Al Negrini was directly involved in obtaining and accepting the appellee's services and work product, we turn to his contentions that the services and work were performed and supplied to the corporation, The New Sea

Breeze, Inc., and not to him individually. In this connection he asserts that the appellee's work was not performed until after the corporation, The New Sea Breeze, Inc., had been incorporated on November 17, 1982; that it had been the intention of Earl Israel and himself to operate the restaurant as a corporation; that all invoices received from appellee, that were paid, were paid by "The New Sea Breeze, Inc." corporation; that the first invoice from appellee was not received until January 1983; that Earl Israel was president and that he was the vice-president of the corporation; and that the business transacted by them was for the corporation.

To rebut Al Negrini's contentions, appellee points out that Earl Israel and Al Negrini had informed appellee's president, Barclay Lawder, that they were going to build the new restaurant with Al's parents, J.L. and Helen Negrini; that no mention of a corporation was made; that appellee was not aware, when the work was performed, that the restaurant had been incorporated; that no notice was ever given to appellee of the change of status of the ownership of "The Sea Breeze Restaurant"; and that appellants did not give notice of incorporation as required by Texas Law.

It appears undisputed in the record that appellee was informed that Israel and the three Negrinis were going to open and operate a restaurant to be called "The Sea Breeze Restaurant"; that all the advertising and other materials prepared by appellee utilized the title, "The Sea Breeze Restaurant"; that all appellee's invoices were mailed to "The Sea Breeze Restaurant"; that none of the parties involved in the formation or operation of the restaurant ever informed the appellee of their intent to form a corporation to conduct the business affairs of the restaurant; that no notice was given to appellee when the corporation was formed; and that throughout the existence of the restaurant it operated under the title "The Sea Breeze Restaurant."

Whenever a business firm desires to become incorporated without a change of the firm name, no change shall take place in the liability of the firm, or the members thereof, to those dealing with the firm or its members unless the firm gives notice (1) as required by common law, and, (2) gives notice of such intention to incorporate for at least four consecutive weeks, at least one day each week, in some newspaper published in the county in which such firm has its principal business office. Tex.Rev. Civ.Stat.Ann. art. 1302–2.02 (Vernon 1980). This same article provides, "It shall be a defense that a claimant had actual notice or knowledge of such incorporation."

We hold that there is sufficient evidence in the record to support the trial court's findings that the ownership of "The Sea Breeze Restaurant" was changed from Al Negrini and others to a corporation without changing the firm name; that no notice was given of such change of ownership as required by article 1302–2.02; and that the appellee was without actual knowledge that the business had become incorporated. We further hold that this evidence negates Al Negrini's contention that this is a corporate debt and that he is not personally responsible to the appellee for the payment of the debt. Appellants' points of error 23, 24, 25, 26, 27 and 28 are overruled.

We next turn to the contention of Helen and J.L. Negrini that there was no evidence or insufficient evidence to support the trial court's findings that they transacted business as a general partnership with Al Negrini and Earl Israel in July of 1982. They contend that the appellee cannot make a recovery under the theory of partnership because (1) appellee did not allege that there was a partnership, (2) appellee did not present any evidence that there was an agreement to form a partnership among the defendants, (3) appellants did not intend to form a partnership, and (4) appellee did not present evidence that the defendants did any acts which would constitute a partnership. The importance of the partnership issue is emphasized by the fact that the appellees in their brief have indicated that unless there was a partnership, the

appellees have no basis for recovery against Helen and J.L. Negrini.

The appellants initially contend that the appellee did not plead partnership and therefore the court erred in entering judgment against the appellants on the basis of partnership.

Appellee went to trial on its first amended petition. In that petition the three Negrinis and Negrini's, Inc. were named defendants. In paragraph II the appellee alleged:

As shown on the attached statement of account, the plaintiff provided advertising services to and designed menus and logos for the defendants at the request of defendants, and defendants accepted and thereby became bound to pay the plaintiff the stated price of said services, which stated price is reasonable, fair and the customary price charged for the same or similar services in Galveston, Texas.

In presenting its case, appellee offered into evidence an assumed name certificate signed by the three Negrinis and Earl Israel. This certificate stated that the four individuals were going to do business as a proprietorship and general partnership under the name of "The Sea Breeze Restaurant." The appellants objected to the admission of the exhibit on the basis that "it's not shown that the witness ever knew about it ... and ... this has been superseded by a different assumed name certificate." No objection was made by the appellants that the appellee had not pled partnership. In fact, the appellants put on evidence to deny that a partnership had ever existed.

The Texas Rules of Civil Procedure govern the nature and manner of pleading in civil matters in Texas. Rule 45 states that a petition or answer must consist of a statement in plain and concise language of the plaintiff's cause of action or the defendant's grounds of defense. Rule 47(a) requires that a pleading contain a short statement of the cause of action sufficient to give fair notice of the claim involved. In the instant case, the appellee's petition makes it clear that it is suing Al Negrini, Helen Negrini, and J.L. Negrini for the services performed for the Sea Breeze Restaurant. Although the appellants denied that they were the owners or operators of the restaurant at any time relevant to the lawsuit, they did not specially except to the appellee's petition on the basis of ambiguity or that the petition failed to apprise them of the capacity in which they were being sued.

Rule 90 of the Texas Rules of Civil Procedure states "[e]very defect, omission or fault in a pleading either of form or of substance, which is not specifically pointed out by exception in writing and brought to the attention of the judge in the trial court before the instruction or charge to the jury, or in a non-jury case, before the judgment is signed, shall be deemed to have been waived by the party seeking reversal on such account ...." Except for their answer, shown above, the defendants failed to apprise the trial court in writing of the defect, "no pleading of partnership," prior to the judgment being signed.

■■■ Although the word "partnership" was not used in plaintiff's first amended petition, we hold that the wording used in the petition was sufficient to give the appellants fair notice of the appellee's claim of partnership. We further hold that any defect, omission, or fault in the appellee's pleading concerning allegations of partnership has been waived by the appellants because of their failure to comply with the requirements of Rule 90 of the Texas Rules of Civil Procedure.

We next look at the allegations of appellants Helen and J.L. Negrini that there is no evidence that there was ever an agreement between themselves and Earl Israel and Al Negrini to form a partnership, and further that there was no evidence or insufficient evidence that any of their actions, concerning the Sea Breeze Restaurant, amounted to or could be construed as a matter of law as a partnership.

■■■ The Texas Uniform Partnership Act, art. 6132b, sec. 6(1) defines a partner-

ship as "an association of two or more persons to carry on as co-owners a business for profit." The person seeking to establish a partnership has the burden of proof to establish its existence. The real test, ordinarily, is proof of the intention of the parties to create a partnership. *Holman v. Dow*, 467 S.W.2d 547, 550 (Tex.Civ. App.—Beaumont 1971, writ ref'd n.r.e.). No single fact may be stated as a complete and final test of partnership. Each case must rest on its own facts to determine whether a partnership relation exists. *Davis v. Gilmore*, 244 S.W.2d 671, 673 (Tex. Civ.App.—San Antonio 1951, writ ref'd); *see State v. Houston Lighting & Power Co.*, 609 S.W.2d 263, 267 (Tex.Civ.App.— Corpus Christi 1980, writ ref'd n.r.e.).

The appellee's evidence that a partnership existed between Helen Negrini, J.L. Negrini, Al Negrini, and Earl Israel for the purpose of operating the "Sea Breeze Restaurant" basically consisted of the following:

(1) A conversation in which Earl Israel and Al Negrini told Barclay Lawder that Helen and J.L. Negrini would be involved in the project with Earl and Al.

(2) The assumed name certificate, signed by the three Negrinis and Israel, on which the general partnership box indicating ownership was checked.

(3) The involvement of Helen and J.L. Negrini in obtaining loans for the business after Earl Israel failed to obtain financing for the construction of the building.

(4) The taking over of the restaurant equipment and property by Negrini's Inc., after the filing of a chapter 11 petition by The New Sea Breeze, Inc.

The appellee does not contend that Barclay Lawder was ever expressly told that the three Negrinis and Earl Israel were partners, intended to be partners, or was told what business relationship existed between the Negrinis and Israel. We assume, therefore, that the trial court based its findings that there was a general partnership upon (1) the assumed name certificate and (2) later financial involvement of

Helen and J.L. Negrini. To arrive at this conclusion, the trial court had to find (1) that the three Negrinis and Earl Israel intended to associate themselves, (2) as co-owners of the restaurant and (3) for the purpose of making a profit, since these are the elements in the definition of a partnership in article 6132b, sec. 6(1).

The filing of the assumed name certificate by the Negrinis and Israel did not change the legal relationship of the parties with respect to the ownership of the Sea Breeze Restaurant. *Houston Lighting & Power Co.*, 609 S.W.2d at 268. The statement on the face of the assumed name certificate indicating that the business relationship between the four parties was to be a general partnership is evidence of the intent of the parties. However, this is the only direct evidence that would indicate the parties had an intention to form a partnership. All the rest of the direct evidence is to the contrary. Al Negrini testified that he and Earl Israel were going to form a corporation to run the Sea Breeze Restaurant and that the restaurant would be located on property owned by his mother and father; that the corporation would finance and build a building on his mother's and father's property and that he and Earl Israel, as officers of the corporation, would operate the restaurant.

Helen Negrini testified essentially the same as Al Negrini. She stated that she and her husband had no intention of being involved in the restaurant business and that this was a business deal in which her son and Earl Israel were to build a restaurant building on the land owned by her and her husband. She stated that at a later date, when Earl Israel was unable to obtain the financing for the construction of the building, she and her husband individually signed instruments which gave the lending institution a deed of trust upon their land as collateral for the loan made to construct the building in which the restaurant was to be housed. Mrs. Negrini also testified that the box designating a general partnership had not yet been marked when she signed the assumed name certificate. Al Negri-

ni's testimony corroborated this statement by his mother and he said that he checked the general partnership box because there was not a corporation box on the assumed name certificate and general partnership was the closest thing to a corporation that he could find on the certificate. There is no direct evidence in the record that the Negrinis authorized their son as agent, partner, or any other business relationship to state that they were going to be in a general partnership with their son and Earl Israel.

All other evidence from which it might be inferred that a partnership existed between the four parties is circumstantial. This evidence consists of the fact that the Negrinis were apparently to receive stock in the corporation entitled "The New Sea Breeze, Inc.," and that they assisted in the financing after Earl Israel could not obtain financing. Further, when "The New Sea Breeze, Inc." filed for bankruptcy, Helen and J.L. Negrini formed a new corporation which obtained the name and assets of the "Sea Breeze Restaurant."

We hold that although this evidence indicates the involvement of Helen and J.L. Negrini in the affairs of the restaurant, it is insufficient to support the trial court's finding that Helen Negrini and J.L. Negrini intended to be and were associated co-owners with their son Al Negrini and Earl Israel under the firm name "The Sea Breeze Restaurant," a partnership, in July 1982. We further hold that since there is no evidence that Al Negrini was the agent of his mother and father in July and August of 1982, and no partnership existed, Helen and J.L. Negrini were not liable to appellee for the work and services it performed for the Sea Breeze Restaurant. We sustain the appellants' following points of error as to Helen and J.L. Negrini: 3, 15, 16, 18, 35, 36, 42, and 43. We overrule appellants' points of error 1, 2, 17, 19, and 22.

In points of error 37 through 41, the appellants attack the award of damages, interest, and attorneys fees. However, in their briefs they state as follows: "Defend-ants are not questioning the amounts, just their liability for the amounts." In view of our prior discussion of liability, we overrule these points of error insofar as they pertain to Al Negrini and sustain these points of error insofar as they are applicable to Helen and J.L. Negrini.

We have carefully considered the remaining points of error raised by the appellants, and insofar as they tend to establish liability on the part of Helen and J.L. Negrini, we sustain those points of error. On the other hand, these same points of error are overruled as to Al Negrini.

The judgment of the trial court is reversed and rendered to show that appellee, Plus Two Advertising, Inc., take nothing against the appellants Helen Negrini and J.L. Negrini. In all other respects the judgment of the trial court is affirmed. Costs of this appeal are charged one-half to Al Negrini and one-half to Plus Two Advertising, Inc.

LEVY, J., concurs in results only.