### BENAVIDES v. GARCIA. (No. 730—4662.)

(Commission of Appeals of Texas, Section B. Feb. 2, 1927.)

1. Appeal and error ⬨⟺854(2)—Judgment which is correct will not be reversed merely because improper reason is given for decision.

A judgment which is correct in any event will not be reversed merely because court rendering it gave an improper reason for decision.

2. Courts ⬨⟺91(1)—Former decision of Supreme Court construing will governs in subsequent case calling for construction of will.

Under doctrine of stare decisis, former decision of Supreme Court construing a will governs in subsequent case also calling for construction of will.

3. Courts ⬨⟺89—Doctrine of "stare decisis" means that decisions of highest court become law of state.

Doctrine of "stare decisis" means that decisions of law made by highest court of state become law of that state.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Stare Decisis.]

⬨⟺For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Adoption ⊙⇒20—Wills ⊙⇒627(1)—Adoption contract and mutual will held to vest undivided half interest in homestead in named remaindermen.**

Adoption contract and mutual will of husband and wife, giving survivor life estate, and, upon his or her death, devising the homestead in fee to adopted child and to heirs of deceased adopted child, *held* to vest an undivided half interest in homestead in each of named remaindermen.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Action by Lazaro G. A. Benavides against S. E. Garcia. Judgment for defendant was reversed and rendered in part and otherwise affirmed by the Court of Civil Appeals (283 S. W. 611), and plaintiff brings error. Affirmed.

Pope, Pope & Pope, of Laredo, and Cunningham & Moursund, of San Antonio, for plaintiff in error.

Mann, Neal & Mann, of Laredo, for defendant in error.

SPEER, J. Lazaro Garza Ayala Benavides brought this action in the form of trespass to try title against S. E. Garcia to recover title and possession of lot 8, block 92, Western addition to the city of Laredo. Garcia answered by plea of not guilty. There was a trial before the court resulting in a judgment for the defendant. Upon appeal by Benavides that judgment was in the main affirmed. 283 S. W. 611. As stated by Justice Smith of that court, the case involves the construction of a contract of adoption as well as the construction of a somewhat intricate joint and mutual will executed by Santos Benavides and wife, Augustina V. de Benavides.

[1] The Court of Civil Appeals decided the case, for the most part, upon the ground of estoppel against plaintiff in error. In the case of Rossetti v. Benavides (Tex. Civ. App.) 195 S. W. 208, it appears plaintiff in error's mother, a beneficiary under the will in controversy, in her own behalf and as next friend to plaintiff in error, who was then a minor, sued Rossetti to recover certain land not the land here in controversy, and recovered, basing the right to such recovery upon the contention that under the terms of the will the property of the testators vested in fee simple in equal parts in Juan V. Benavides and Francisco Garcia Ayala Benavides, subject only to the life estate of the survivor. The present suit instituted by plaintiff in error after arriving at his majority proceeds upon a different theory; that is, it is the contention that when properly construed the will vests or vested in these persons life estates only, and that under its terms upon the death of Juan without issue his portion went to Francisco, upon whose death plaintiff in error's only son and heir would take the prop-

erty. It thus appears the two contentions as to interpretation of the will are at variance. The trial court, while he made no finding indicating the ground upon which he placed his judgment for the defendant, nevertheless admitted in evidence over the objections of the plaintiff the pleading, judgment, and mandate in the Rossetti Case when offered for the express purpose of proving estoppel. The Court of Civil Appeals affirmatively based its holding upon estoppel. Irrespective of the correctness of this view, we think the judgments of both courts should be affirmed, and we therefore express no opinion as to the correctness of the grounds upon which the Court of Civil Appeals based its affirmance. It is well settled that a judgment which is correct in any event will not be reversed merely because the court rendering it gave an improper reason for the decision, and before we would reverse the judgment we would ascertain if there existed other reasons compelling it. Associated Oil Co. v. Hart (Tex. Com. App.) 277 S. W. 1043; Holland v. Nimitz, 111 Tex. 419, 232 S. W. 298, 239 S. W. 185; Hanes v. Hanes (Tex. Com. App.) 239 S. W. 190.

[2, 3] In the Rossetti-Benavides Case, supra, this identical will and the contract referred to in it were before the courts, and constituted the basis of the recovery, and while it was not technically a proceeding to construe the will, neverthless the courts necessarily did construe the will and announced the conclusion that the contract and will, in view of the adoption and ratification by the surviving widow, vested an undivided one-half interest in the Laredo lot No. 5 in Francisco, which was inherited by the plaintiffs in that suit as heirs of Francisco, and the other undivided one-half interest in Juan Benavides. The Supreme Court refused a writ of error to this decision. We think that decision governs this case and calls for an identical construction of the will. This conclusion is not predicated upon any theory or rule of res adjudicata or estoppel whatever. It is rather based upon the doctrine of stare decisis, which as a matter of public policy and sound legal administration requires the courts in the decision of cases to observe a proper respect for the prior decisions of the highest court. While the rule is not unbending, and the courts are not without power to depart from a prior ruling, or of course to overrule it, where cogent reasons exist, and where the general interest will suffer less by such departure, than from a strict adherence (Higgins v. Bordages, 88 Tex. 458, 31 S. W. 52, 803, 53 Am. St. Rep. 770), yet a due regard for the stability of rights acquired under the law as announced by the highest court of the state, to say nothing of the propriety of uniformity of decision by that court, requires that when a question of law has been definitely settled once it should remain the law

unless there exists the strongest reasons for changing it. It is obvious this rule of decision is something entirely apart from the conception of res adjudicata or estoppel of any sort. Certain elements enter into the consideration of the binding force of a judgment, or the operation of an estoppel, that have no place whatever in the rule of stare decisis, and the force of the rule is the same whether the parties to the two suits are identical or not, and, as to estoppel, whether they or either of them knew of the prior decision or any of the facts inducing it. Concretely stated, the doctrine merely means that the decisions of law made by the highest court of the state become the law of that state.

Black, on Judgments, correctly states it as follows:

"According to the doctrine of the best cases, a title previously passed upon although in a suit between different parties, will not be again examined and adjudged in a case proceeding upon the same state of facts and presenting precisely the same question unless the same is manifestly erroneous. This, however, is not strictly upon the ground that the matter is res adjudicata, but rather upon those settled principles which induce the courts to abide by their own former decisions, that is, the rule of stare decisis." Black on Judgments, § 603.

The author cites a Maryland case, that of Kolb v. Swann, 68 Md. 516, 13 A. 379, where it was said:

"It is apparent from this statement that this court, having within a year decided that the African Church had a good and merchantable title to the whole of this graveyard lot, that the question which first presents itself is whether we should now re-examine that decision. We may concede, for the sake of the argument, that technically and strictly speaking, this suit is not res judicata, because the parties are different, and the present parties should not be held conclusively bound by the decision in that case, in which they had no opportunity to be heard. We may also concede that the judgment in that case is not what may properly be termed a judgment in rem, and binding on the world. We may also further concede the power of the court to reverse its own decision. But, notwithstanding all this, we think that both sound reason and the authority of adjudged cases will amply justify us in a refusal to reopen this question of the title of the graveyard."

In Fernald v. First Church of Christ, Scientist, 77 N. H. 108, 88 A. 705, the Supreme Court of New Hampshire, in deciding a case which involved the construction of a will, said:

"The question as to which of these contentions, if either, is sound depends on Mrs. Eddy's intention; for it is the court's duty to effectuate her intention in so far as it can be ascertained and is legal. * * * The question of her intention was considered at length in Glover v. Baker, 76 N. H. 393, 83 A. 916, and it was held that she did not intend to give this property to the church, * * * but to create a public trust for promoting and extending Christian Science as taught by her to all parts of the world. * * * It is probably technically true, as the church contends, that it was not a party to that suit, and that the matters decided are not res adjudicata in so far as it is concerned, but that in and of itself furnishes no sufficient reason for re-examining the questions. Nothing that has been said or written in this case has caused the court to doubt the soundness of the views already expressed."

See, also, 34 Corpus Juris, "Judgments," § 1157, p. 746; 15 Corpus Juris, "Courts," § 357, p. 956.

We know of nothing in the decisions of this state establishing a different rule of law or decision.

[4] The adoption contract and the will involved in both the Rossetti and this case are not such in the light of this doctrine to require a different construction at this time from that made in the Rossetti Case. Those instruments are as follows:

"The State of Texas, County of Webb:

"Know all men by these presents:

"That we, Santos Benavides and Agustina Benavides, born Villareal, both of the county of Webb in the state of Texas, being husband and wife, jointly as well as severally, hereby make the following statement and declaration, solemnly and irrevocably and availing ourselves of the provisions of an act of the Legislature of the state of Texas, approved January 16th, A. D. 1850, entitled, 'An act to prescribe the mode of adoption,' to wit:

"That being without any living children, begotten in lawful wedlock and neither of us expecting hereafter to beget any such and we having, from their infancy, raised, taken care of and educated the hereinafter named parties in consideration of the love and affection which we and each one of us feel and bear toward them and for other good and sufficient reasons us severally thereunto moving, we, and each one of us, desire to adopt said parties as our legal heirs.

"Wherefore we and each one of us, have taken, admitted and adopted and hereby do take, admit and adopt said parties, being Agustina Benavides, the wife of Lazaro Garza y Ayala of Monterrey, Republic of Mexico, born in Laredo, January 9th, A. D. 1849, Juan Benavides, born in Laredo, December 27th, A. D. 1856, and Santos Eraclio Benavides, born in Guerrero, June 8th, A. D. 1864, and each one of said three named parties, as our and each one of our legal heirs, irrevocable and forever.

"And they and each one of them, to be in lieu and instead of, and the same as our own legitimate children might, could or would have been in every respect, and to be and remain with all the rights and privileges, both in law and in equity to all intents and purposes, and to the same extent as our and each of our legal, sole and universal heirs of our several bodies, might or could have been, or would be; or as, being issue of the marriage now existing between us, the said parties herein and hereby by us severally adopted, might, could or would be by the law of the state of Texas relative to descent and distribution and inheritance as our children and brothers and sisters.

"And, in consideration of the premises, and hereafter to prevent any and all misunderstanding as to our intention and will and as to the effects of and benefits to result from this our act of adoption of the herein named three parties we and each one of us hereby give, grant and set over, to take effect at the death of either of us, unto the said Augustina Benavides, Juan Benavides and Santos Eraclio Benavides and to their respective lawful heirs, to have and to hold the same irrevocably and forever, to be and by them shared alike and equally and evenly divided, or the proceeds of sales thereof, 'the one-half of the real, personal and mixed property' of which at the time of such death the community existing between the deceased and his or her surviving partner may own or possess and also one-half of all the property, rights, credits, claims, demands and assets, being the separate and individual property of the deceased and not included in such community or thereunto belonging.

"Witness our hands and scrolls in lieu of seals at Laredo county of Webb, Texas, this 3d day of January in the year of our lord one thousand eight hundred and seventy-one.

                    "Santos Benavides [L. S.]
                    "Augustina Benavides [L. S.]"

"The State of Texas, County of Webb:

"Be it known that we, Santos Benavides and Augustina Villareal de Benavides, wife of said Santos Benavides, residents and citizens of the said city of Laredo in said county and state, desiring to make and verify our last will and testament hereby revoking, annulling and canceling any and all other wills heretofore made by us or either of us. And especially the will made by us, on the 18th day of July, A. D. 1881, and recorded in records of Webb county, Texas, Book D, vol. 12, pp. 301, 2, 3, do hereby declare:

"1st. That in case of the death of either of us, the deed or instrument of writing signed by us and archived in the records of the said county of Webb, whereby we adopted certain persons therein mentioned, viz., Augustina Benavides Ayala and Juan V. Benavides, both born in the city of Laredo, and Santos Eraclio Benavides, born in the city of Guerrero, Mexico, shall at once take effect; and those adopted persons or rather those of them living being Francisco Garza Ayala Benavides, only son of Augustina Benavides Ayala and Juan V. Benavides, the third Santos Eraclio Benavides being now dead, shall thereupon become entitled to the respective shares of our property given them by this will and by said deed or instrument of adoption.

"2nd. We further declare that in case of the death of either of us the survivor shall be the executor (or executrix, as the case may be) of this will and shall have the right to control and keep together all the property, both real and personal, and mixed which either or both of us may then own, which control shall continue for a year. This control being for the purpose of closing up the mercantile and other business in which either of us may then be engaged and of gathering together our property. That at the end of said one year after the decease of either of us one-half (½) of all our said property, real, personal and mixed, except our homestead in said city of Laredo, shall be distributed by such survivor as executor (or executrix, as the case may be) among the two remaining persons so as aforesaid, adopted by us. That this dis-

tribution of said half of our property shall be made in conformity with the direction contained in said deed or instrument of writing adopting those persons that is in equal shares, but until the end of such year from the death of either of us no part of the said property shall be distributed.

"3rd. We further declare it to be our will that the homestead in the city of Laredo where we now live and also one-half (½) of all other property which we may own at the time of the death of either of us shall go to the survivor for his or her use, and enjoyment for life, the manner and extent of such use and enjoyment to be entirely within the discretion and judgment of such survivor. That at the death of such survivor, the homestead and the said other property if in existence is to be distributed among the two remaining persons so as aforesaid adopted by us, in the same manner and proportion as the other half of our said property, shall have been distributed.

"4th. That if any of the said two remaining persons adopted by us—that is to say, Francisco Garza Ayala Benavides, only son of Augustina Benavides Ayala, and Juan V. Benavides—should die without issue either before or after our death, or the death of either of us, then the respective share of Francisco Garza Ayala Benavides shall go to his father, Lazaro Garza Ayala, if alive, if not, to the survivor, Juan V. Benavides, and the respective shares of Juan V. Benavides shall go to his wife, Laura Benavides, if alive; if not to the survivor Francisco Garza Ayala Benavides. This regulation to apply whether such death should happen before or after any part or all of our property may have been distributed among the two. But provided that any of the two should die but have legitimate issue then such issue is to receive the respective share of such person.

"5th. We further declare it to be our will that the survivor acting as executor or executrix as aforesaid shall not be required to give any bond previous to entering upon the duties of such executorship or at any time thereafter and that the court shall have no control whatever over such survivor in as far as relates to the control of our property, but that the performance of such duties and the care and distribution of our property according to the true spirit and intent of this will, shall be left entirely to the judgment and discretion and good faith of such survivor. It being intended hereby that the court shall have nothing further to do with the carrying out of the provisions of this will than relates to the probate and registry of the same and the filing of an inventory of our property.

"In witness whereof we hereunto sign our names in the presence of C. A. McLane and A. Winslow and Jose Ma. Vela, witnesses to our signatures hereto, who sign their names in our presence and at our request, this 12th day of January, A. D. 1887.

                    "Santos Benavides.
                    "Augustina Villareal de Benavides."

So that, following the decision in the Benavides-Rossetti Case, we hold that the will, in the light of the contract incorporated therein by reference, vested title in equal moieties in Juan V. and Francisco Garcia Ayala Benavides, and, the record showing indisputably that Francisco through whom plaintiff in er-

(290 S.W.)

ror claims conveyed the property to another, the judgment of both courts is necessarily correct and should be affirmed.

CURETON, C. J. Judgments of the district court and Court of Civil Appeals both affirmed, as recommended by the Commission of Appeals.