Motion for Rehearing Granted; Affirmed in Part; Reversed and Rendered in
Part








 

Motion
for Rehearing Granted; Affirmed in Part; Reversed and Rendered in Part.
Memorandum Opinion of March 24, 2005 Withdrawn, and Majority and Dissenting
Opinions on Rehearing filed October 5, 2006.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-03-00103-CV

____________

 

W & F TRANSPORTATION, INC.,
E.H. WILHELM, SR., 

AND MARGARET WILHELM, Appellants

 

V.

 

CINDY AND RICKY WILHELM, Appellees

 



 

On Appeal from the County
Civil Court at Law Number 1

Harris County, Texas

Trial Court Cause No. 750,292

 



 

D I S S E N T I N G  O P I N I O N  O N  R E H E A R I N G 








What happens when the parties agree not to record some of
the proceedings at trial and then the losing party seeks to reverse the trial
court=s judgment based
on issues that relate to the unrecorded portion?  The answer to this question
determines the outcome of this case.  In analyzing this issue, the court
misstates and misapplies the general common-law rule governing the consideration
and treatment of an appellate record that lacks portions of the trial
proceedings.  Furthermore, the court improperly infers an agreement by the
parties that a record of closing arguments is not a necessary part of the
appellate record.

The court makes three additional errors in analyzing the
liability of E.H and Margaret Wilhelm (hereinafter the AIndividual
Defendants@).  Specifically, the court erroneously (1) concludes
the Individual Defendants denied they were doing business as AW&F
Transportation@ by means of their verified denial of liability in the
capacity in which they were sued, (2) states the trial court=s judgment against
the Individual Defendants should be reversed because AW&F
Transportation,@ as used in the jury charge, could not
have included them, and (3) fails to try to interpret jury findings to uphold
the judgment after stating that this court must do so.

The court correctly concludes that issues seven, eight, and
ten should be overruled; however, because the court sustains the third issue
and part of the fourth issue and does not affirm the trial court=s judgment in its
entirety, I respectfully dissent.  

What is the effect of the parties= agreement not to
have a record made of the proceedings during closing arguments?








Just before closing arguments were to begin during the
trial of this case, the parties= counsel agreed to release the court
reporter, with the result that no record would be made of the proceedings
during closing arguments.  The main issue in this case is the effect of this
agreement on the losing parties= appeal from the trial court=s adverse judgment
on a unanimous jury verdict and their challenge of the trial court=s denial of their
motion for judgment notwithstanding the verdict.  As explained below, under the
applicable common-law rule, omitted portions of an incomplete trial record are
presumed to be relevant to the appellate issues and to support the trial court=s judgment, unless
this presumption is reversed by an exception to this rule, for example by the
application of Texas Rule of Appellate Procedure 34.6(c), governing appeals on
partial reporter=s records.[1] 
Appellants W&F Transportation, Inc., E.H. Wilhelm, Sr., and Margaret
Wilhelm (hereinafter collectively the AW&F Parties@) have not invoked
or asserted any exception to the general rule.  The majority errs in creating
an exception for unrecorded closing arguments.   








The parties trying a case, upon request, have a right to
have a full record made of the trial proceedings.  See Tex. Gov=t Code Ann. ' 52.046 (Vernon
2005) (requiring official court reporter to record proceedings if requested to
do so); Tex. R. App. P. 13.1(a)
(stating that official court reporter must attend court sessions and make a
full record of the proceedings, unless excused by agreement of the parties); Nabelek
v. Dist. Attorney of Harris Co., CS.W.3dC,C, No.
14-03-00965-CV, 2005 WL 2148999, at *5 (Tex. App.CHouston [14th
Dist.] Sept. 8, 2005, no pet. h.) (indicating that Rule 13.1(a) is void because
it conflicts with section 52.046 of the Texas Government Code).  They are also
free to agree that all or part of the trial proceedings should not be recorded.[2] 
The Texas Rules of Appellate Procedure do not directly address the effect of
such an agreement.  However, a fundamental necessity for appellate review of
trial proceedings is the ability to obtain a record of what occurred in the
trial court.  Absent the ability to review a complete trial record, appellate
courts run the risk of undoing valid and proper decisions of juries and trial
courts because of the reviewing court=s ignorance of
what occurred during the unrecorded parts of the trial.  To avoid this pitfall,
appellate courts have established a common-law rule that the omitted portions
of an incomplete trial record are presumed to be relevant to the appellate
issues and to support the trial court=s judgment, absent
application of an appellate rule that would reverse this presumption.  See
Christiansen v. Prezelski, 782 S.W.2d 842, 843 (Tex. 1990) (stating that A[a] reviewing
court must examine the entire record in a case in order to determine whether an
error was [reversible error]@ and that if the predecessor rule to
current Rule 34.6(c) does not apply, then Ait will be
presumed that the omitted portions [of the record] are relevant to the
disposition of the appeal@); Middleton v. Nat=l Fam. Care Life
Ins. Co., No. 14-04-00428-CV, 2006 WL 89503, at *2 (Tex. App.CHouston [14th
Dist.] Jan.  17, 2006, pet. filed) (stating that there was no reporter=s record of the
trial and holding that, because appellant did not comply with Rule 34.6(c) and
the appellate record did not contain a complete record of the trial, this court
would presume the omitted portions are relevant to the disposition of this
appeal and support the trial court=s judgment) (mem.
op.); Patel v.  State, No. 14-03-01082-CR, 2003 WL 22976186, at *1 (Tex.
App.CHouston [14th
Dist.] Dec. 18, 2003, no pet.) (affirming trial court=s judgment and
holding that this court could not determine whether the trial court erred
because this court lacked a Acomplete record@ due to the court
reporter=s failure to make
a record of the trial proceedings) (not designated for publication); Robertson
v.  Tex.  Dep=t  of Transp., No.
03-00-00167-CV, 2000 WL 1228025, at *1B2 (Tex. App.CAustin Aug. 31,
2000, no pet.) (holding that, in case in which parties agreed that no record
would be made of the proceedings during one day of a bench trial, appellate
court did not have a complete record due to the absence of a record from that
day and that, absent an agreed record or compliance with Rule 34.6(c),
appellate court will presume the omitted portions of the record support the
trial court=s judgment) (not designated for publication).  








The W&F Parties have not sought to appeal under Rule
34.6(c).  They do not claim to have appealed under this rule, and they have not
taken any of the steps to invoke this rule. See Tex. R. App. P. 34.6(c).  The majority agrees that this is
not a Rule 34.6(c) case and further concludes that, even if the W&F Parties
had sought to invoke Rule 34.6(c), this rule does not apply to situations in
which part or all of the proceedings are not recorded in the trial court. 
Although this court need not address this issue, even presuming that Rule
34.6(c) does not apply in such cases, the inapplicability of this rule would
not change the general rule that the omitted portions of an incomplete trial
record are presumed to be relevant to the appellate issues and to support the
trial court=s judgment, absent application of an appellate rule
that would reverse this presumption.  See Middleton, 2006 WL 89503, at
*2; Patel, 2003 WL 22976186, at *1. 

The majority concludes that the parties= agreement to
dismiss the court reporter implies an agreement that no record of the closing
arguments was needed.  See ante at p. 6. However, the subject matter of
the parties= agreement was that the court reporter could be
released.  Nothing in the record reflects the parties= reasons, if any,
for this agreement. Though this agreement implies that no record would be made
of the proceedings during closing arguments, it is not reasonable to infer from
this exchange an additional agreement that no record of the closing arguments
was needed, particularly when such an inference contravenes the common-law
presumption of relevance.  If the majority=s analysis were
correct, then in both civil and criminal cases, parties could agree to forego
recording part, or indeed all, of the trial and then still insist that
appellate courts review their various appellate issues seeking to overturn the
jury=s findings or the
trial court=s rulings.  This is not the law.  See Middleton,
2006 WL 89503, at *2; Patel, 2003 WL 22976186, at *1.  








Even more troubling is the court=s willingness to
infer an agreement not stated in the record.  Courts should enforce agreements
parties actually express and not undertake to find agreements that are not made
manifest.  Agreements parties make in the course of litigation usually have
risks and consequences, and the decision to forego a court reporter for a
portion of the trial is no exception.  The consequences of the parties= agreement were
foreseeableCeven if unforeseen.  The court=s role on appeal
is a neutral oneCto hold the parties to the agreement they
made, not to save parties from the consequences of their stated agreement by
inferring an agreement that the parties did not express.  This court should
hold the parties to their agreement as stated on the record.  Any other course
will only create uncertainty and unfairness. 

Although there are not many cases dealing with appellants
who allowed a record not to be made of part of the trial and then sought to
reverse the trial court=s judgment, this deficit is likely
attributable to the rarity of appellants choosing this unusual and risky
course.  It is a fundamental part of our system that appellate courts have the
means to learn what happened during the trial whose result they are asked to
overturn.  Truth can be stranger than fiction, and to reverse a trial court=s judgment based
on a unanimous jury verdict without knowing what transpired during part of the
trial would result in a waste of resources and the all-to-real potential for an
unjust reversal of the trial court=s judgment
contrary to the truth.  AImperfect as it may be, our legal system
attempts to ascertain facts to arrive at the truth.@  Kramer v.
Lewisville Mem=l Hosp., 858 S.W.2d 397,
405 (Tex. 1993) (quotations omitted).  To dispense with the requirement that
appellate courts have access to a record of what occurred during trial would be
to abandon the truth-seeking function of the law.  See id.  








For example, in the case at hand, the court reverses as to
the Individual Defendants based on the majority=s conclusion that
the undefined term AW&F Transportation,@ used throughout
the jury charge, must have meant only W&F Transportation, Inc.  However,
this court does not know what transpired during closing arguments.  In his
closing argument, counsel for Cindy and Ricky Wilhelm (hereinafter ACindy and Ricky@) may have told
the jury that AW&F Transportation@ meant all three
defendants.  Counsel for the W&F Parties may have agreed with Cindy and
Ricky on this point, told the jury that AW&F
Transportation@ meant all three defendants, and then argued the jury
should find no liability because there was no evidence of any actionable
conduct by Margaret Wilhelm.  If this were so, then this court=s reversal would
be erroneous based on the W&F Parties= inviting the
error that they assert on appeal.  See, e.g., Bass v. Walker, 99
S.W.3d 877, 889 (Tex. App.CHouston [14th Dist.] 2003, pet. denied)
(holding appellants could not complain of alleged error by trial court in
allowing inadequate settlement credit of $100,000 because appellants
specifically had requested that the trial court apply a $100,000 settlement
credit during closing arguments, thus inviting the alleged error).  Another
possibility is that, during the unrecorded proceedings and without objection,
the trial court may have told the jury that AW&F
Transportation@ meant all three defendants.  








If either of these two scenarios occurred, then the jury
properly found all three defendants liable, and the trial court properly denied
the W&F Parties= motion for judgment notwithstanding the
verdict, which was the sole means by which the Individual Defendants preserved
the issues that the court today sustains.  Because the W&F Parties have not
reversed the general presumption that the omitted portions of the trial record
are relevant and support the judgment, this court should presume that one of
these two scenarios occurred, overrule the third and fourth issues, and affirm
the trial court=s judgment in its entirety.  See
Christiansen, 782 S.W.2d at 843; Middleton, 2006 WL 89503, at *2; Patel,
2003 WL 22976186, at *1; Robertson, 2000 WL 1228025, at *1B2; see also
Mason v. Our Lady Star of the Sea Catholic Church, 154 S.W.3d 816,
818 (Tex. App.CHouston [14th Dist.] 2005,  no pet.) (stating that
case involved partial record because it included closing arguments and charge
conference but did not include the trial evidence and applying the common-law
presumption that the omitted portions were relevant and supported the trial
court=s judgment because
appellant did not comply with Rule 34.6(c)); Hiroms v. Scheffey, 76
S.W.3d 486, 489 (Tex. App.CHouston [14th Dist.] 2002, no pet.)
(holding, in absence of complete reporter=s record or
compliance with Texas Rule of Appellate Procedure 34.6(c), that court of
appeals could not reverse based on charge error, in part because court of
appeals could not review the closing arguments); Gardner v. Baker &
Botts, L.L.P., 6 S.W.3d 295, 296B98 (Tex. App.CHouston [1st
Dist.] 1999, pet. denied) (holding that complete record of trial was not
provided because record lacked voir dire, opening statements, closing
arguments, and some testimony and holding that, because appellants did not
comply with the predecessor rule to Rule 34.6(c), the court of appeals had to
presume that the omitted portions supported the trial court=s judgment). 
Instead, the majority carves out a new exception to the common-law presumption
for unrecorded closing arguments. 

Although the majority sustains issue three and part of
issue four, rather than issues one and two asserting charge error, the W&F
Parties= arguments under
all of these issues are substantially similar.  The court also concludes that
the Individual Defendants preserved error regarding the jury charge=s alleged defect
in referring to an undefined AW&F Transportation.@  See ante
at p. 17 n.12.  In this context, it is worth noting that alleged charge error
is one of several instances in which appellate courts need to review the
closing arguments, even if  no error is alleged to have occurred during the
closing arguments.  See, e.g., Timberwalk Apartments, Partners, Inc. v. Cain,
972 S.W.2d 749, 755B56 (Tex. 1998) (stating that, in
conducting harm analysis as to charge error, court reviews the entire record,
including closing arguments, and finding reversible error, in part, based on
closing arguments).  This court previously has applied the common-law
presumption to an appellate issue asserting that the jury charge contained an
erroneous definition (analogous to the Individual Defendants= third and fourth
issues, which the court sustains), in part because the appellate record did not
contain a record of the closing arguments that would be needed to evaluate this
issue.  See Hiroms, 76 S.W.3d at 489.  There is no justification for the
majority=s departure from
this court=s reasoning in Hiroms.  













The W&F Parties do not dispute that they elected to
forego a court reporter during closing arguments, nor do they dispute that they
failed to appeal under Rule 34.6(c).  Rather, they assert that it is common for
parties, for the sake of economy, to agree that no record be made of closing
arguments.  How often parties make such agreements at trial is subject to
conjecture, but if they do so, it should not be to save money.  The parties are
not required to pay anything to have a record made of the entire trial, and the
court reporter (or court recorder as the case may be) is required to make a
such a record upon request.[3] 
See Tex. Gov=t Code Ann. ' 52.046; Tex. R. App. P. 13.1(a); Nabelek,
2005 WL 2148999, at *5.  After trial, if a party files an appeal, that party
ordinarily must pay to have the record transcribed.  However, by following the
procedures of Rule 34.6(c), a party appealing can save money by designating
only the parts of the record that the party believes are relevant to the
appellate issues.  See Tex. R.
App. P. 34.6(c); Williams v. Gage, No. 12-03-00023-CV, 2003 WL
22839260, at *1 (Tex. App.CTyler Nov. 26, 2003, no pet.) (stating, in
memorandum opinion, that an appellant may use the Rule 34.6(c) procedure to
minimize expense and delay in the appellate process).  An appellant who
sufficiently complies with Rule 34.6(c) avoids the legal presumption that the
portions omitted from the record are relevant and support the judgment.  Under
this rule, other parties and the appellate court itself may arrange to have
transcribed the parts of the record that the appellant did not request.  See
Tex. R. App. P. 34.6(c) &
(d).  On the other hand, neither an appellate court nor an appellee can have
portions of the trial record transcribed if the parties agreed that no record
of these portions would be made in the first place.  Parties are free to
economize by using the Rule 34.6(c) procedure, but agreeing to have no record
made at all saves the parties no money, and, unlike consequences flowing from
the operation of Rule 34.6(c), it prejudices the appellate court=s ability to seek
the truth and determine what happened at trial.  If the parties decide, for
whatever reason, that, come what may, they will not appeal the trial court=s judgment, then
they might reasonably decide not to have the trial recorded.  Indeed, parties
in arbitration often do not record the arbitration proceedings, and this
decision makes sense given the arbitrating parties= inability to
obtain any kind of traditional appellate review of arbitration rulings. 
However, if a party to a case in the court system wants to preserve its rights
to full appellate review, then it should be sure to request that a record be
made of the entire trial.  See Christiansen, 782 S.W.2d at 843; Middleton,
2006 WL 89503, at *2; Mason, 154 S.W.3d at 818; Patel,
2003 WL 22976186, at *1; Robertson, 2000 WL 1228025, at *1B2.  If parties
wish to minimize costs on appeal, they are free to use the procedures of Rule
34.6(c).[4] 
However, when the parties agree that no record is to be made at all during all
or part of a trial, they avoid no costs to themselves and they deprive the
appellate courts and themselves of the ability to obtain a record of what
transpired during the unrecorded portions of the trial proceedings. 








Rather than requiring strict compliance with Rule 34.6(c),
the Texas Supreme Court has adopted a flexible approach in certain cases in
which a rigid application of Rule 34.6(c) would result in denying review on the
merits, even though the appellee has not established  any prejudice from a
slight relaxation of the rule.  See Bennett v.  Cochran, 96
S.W.3d 227, 229 (Tex. 2002).  This approach allows parties who have appealed on
a partial reporter=s record to use Rule 34.6(c) to reverse
the general presumption, even though they have not strictly complied with Rule
34.6(c), for example by timely serving the statement of appellate issues on the
other parties, provided the other parties have not shown prejudice from this
failure to strictly comply.  See id.  The majority asserts that creating
an exception to the common-law presumption as to closing arguments is the only
way to honor this approach as articulated by the Texas Supreme Court in Bennett. 
See ante at p. 8B9, 11 (citing Bennett, 96 S.W.3d at
229).  However, the Bennett approach, by its own terms, has limits. See
Bennett, 96 S.W.3d at 229 (noting limit to Bennett rationale); Mason,
154 S.W.3d at 819B20 (applying common-law presumption
despite Bennett rationale).  The better course would be to recognize the
limits of this approach and leave the creation of new rules of law to the Texas
Supreme Court.  

Furthermore, whether by agreement or otherwise, the failure
to record parts of the trial proceedings that could relate to alleged
reversible error asserted on appeal does not fit within this flexible approach
because this failure substantively interferes with the appellate court=s ability to
properly review the merits.  Moreover, all parties as well as the trial court
and the jury are prejudiced when an appellate court reverses a judgment without
having the ability to review a record of all the trial proceedings that could
have affected the trial court=s rendition of the judgment being
reversed.  If no record is made of parts of the trial, the reviewing court
faces a dilemma in trying to deal with the gaps in the record and resolve the
appellate issues.  Trial counsel=s perceptions of
what occurred during trial may be influenced by conscious or unconscious bias. 
Counsel may have inaccurate memories regarding the details of what transpired
during trials that may have occurred months or even years earlier.  During an
intense trial, counsel=s notes of what occurred may be
incomplete, inaccurate, or just plain wrong due to other human error.  Trial
counsel may not focus on trial occurrences that relate to those appellate
issues that only the opposing party plans to raise because counsel may not be
aware of these issues until after trial.  Trial counsel may not be available on
appeal.  All of these factors make it imprudent for appellate courts to rely
upon the representations and recollections of trial counsel to cure gaps in the
record of what transpired at trial.  Furthermore, in this case, Cindy and Ricky
have not conceded that what occurred during closing arguments is not relevant
to the W&F Parties= appellate issues.  








The merits of appellate points are not well served if an
appellate court considers reversing a trial court=s judgment without
knowing what transpired at trial.  This point is illustrated by a relatively
recent case from this court in which the appellants asserted on appeal that the
trial court erred in applying an inadequate settlement credit; however, during
closing argument at the bench trial, the appellants themselves had requested
that the trial court apply the credit of which they complained on appeal.  See
Bass, 99 S.W.3d at 889.  No party on appeal mentioned that appellants had
made this request during closing argument, and if this court had not had a
record of closing argument, it might have reversed the trial court for awarding
exactly the settlement credit requested by the appellants.[5] 
See id.  Such a ruling would not have served justice, and would not have
credited the work of the trial court in resolving the case.[6]








In sum, the court errs in failing to follow the common-law
presumption regarding incomplete records and in treating an agreement to make
no record of part of the proceedings more favorably than a failure to either
follow Rule 34.6(c) or request the reporter to transcribe the entire record of
the trial proceedings.[7] 
However, as discussed above, the former situation is much more inimical to
proper appellate review than the latter.  Accordingly, this court should apply
the dual presumption that the omitted portions of the trial record are (1)
relevant to the appellate issues and (2) support the trial court=s judgment. In
doing so, this court would reach the merits of the W&F Parties= issues; however,
with relevant portions that support the judgment missing, the W&F Parties
would have virtually no chance for success.  That, however, is a foreseeable
consequence of the W&F Parties= agreement that
part of the trial not be recorded.








Does
Michiana Easy Livin= Country v. Holten compel the
creation of an exception to the common-law presumption?

The majority pronounces that Athis case is
governed by@ the Texas Supreme Court=s recent decision
in Michiana Easy Livin= Country v. Holten, which, the
majority states, Acompels@ an exception to
the common-law presumption for unrecorded closing arguments. See 168
S.W.3d 777, 781B84 (Tex. 2005) (holding that appellate
court need not presume that special-appearance hearing was evidentiary when all
parties conceded that it was not); ante at pp. 4, 11.  The majority=s conclusion that Holten
governs this case and is controlling is undermined by the language in Holten
expressly limiting the analysis in that case to pretrial hearings.  See 
Holten, 168 S.W.3d at 781B84 (stating A[i]t is difficult
to state a bright‑line rule regarding unrecorded pretrial proceedings
. . . the absence of a reporter=s record does not tell us whether a
pretrial hearing was nonevidentiary, or evidentiary but not preserved . . .
the trend has been away from full evidentiary hearings in open court for most pretrial
matters . . .  [p]resuming that most pretrial proceedings are
evidentiary would . . . discourage this trend . . . otherwise, appellate courts
should presume that pretrial hearings are nonevidentiary@ (emphasis
added)). Although, by analogy, some parts of the Holten court=s analysis
arguably may provide some support for the majority=s analysis, Holten
is not on point and does not compel this court to create an exception to the
common- law presumption for unrecorded closing arguments during trial.  See
id.  








There are many reasons why Holten should not affect
the analysis in this case.  The Holten court held that it did not have
to presume that the special-appearance hearing was evidentiary when all parties
conceded that it was not.  See Holten, 168 S.W.3d at 784.  The case at
hand does not involve the issue of whether a hearing was evidentiary; all
parties agree that the hearing in question was the ultimate evidentiary hearingCthe trial.  The Holten
court mentioned a trend away from evidentiary hearings in open court for
pretrial matters; however, there is obviously no trend away from evidentiary
hearings in open court for cases that are called to trial.  See id. at
782B83.  Furthermore,
unlike the parties in Holten, all of whom agreed as to the issue in that
case (whether the pretrial hearing was evidentiary), Cindy and Ricky do not
concede that what transpired during closing arguments is not relevant to the
W&F Parties= appellate issues.  See id. at
784.  

In Holten, the Texas Supreme Court distinguished its
statement in a prior case that a party who fails to request the reporter to
record a pretrial hearing risks waiving any complaint. See id. at 783
(distinguishing Piotrowski v. Minns, 873 S.W.2d 368 (Tex. 1993)).  The Holten
court distinguished this case by pointing out that the parties in that case
agreed that the hearing for which the record was lacking was evidentiary. See
id.  Likewise, Holten has no application to the case at hand because
the hearing in questionCthe trialCwas an evidentiary
hearing at which parties who fail to see that a record is made risk waiving
complaints.  








In deciding whether to presume that the unrecorded pretrial
hearing was evidentiary, the Holten court found significance in the fact
that the appellate rules formerly stated that the parties must request the
court reporter to make a record; however, now Texas Rule of Appellate Procedure
13.1 states the court reporter must make a record unless excused by agreement
of the parties.  See Tex. R. App.
P. 13.1; Holten, 168 S.W.3d at 783.  The majority relies on this
rule and this part of Holten in its analysis.  See ante at pp. 5B6, 11B13.  This reliance
is at odds with the analysis of this court in Nabelek v. District Attorney
of Harris County, in which this court indicated that Rule 13.1 is void
because it conflicts with section 52.046 of the Texas Government Code, which
requires court reporters to make a record of proceedings only when requested to
do so.  See Tex. Gov=t Code Ann. ' 52.046 (requiring
official court reporter to make record of proceedings if requested to do so); Tex. R. App. P. 13.1(a) (stating that
official court reporter must attend court sessions and make a full record of
the proceedings, unless excused by agreement of the parties); Nabelek, CS.W.3d at C, 2005 WL 2148999,
at *5 (indicating that Rule 13.1(a) is void because it conflicts with section
52.046 of the Texas Government Code); accord Langford v. State, 129
S.W.3d 138, 139 (Tex. App.CDallas 2003, no pet.) (agreeing with Polasek
case that Rule 13.1 is void because it conflicts with section 52.046);  Polasek
v. State, 16 S.W.3d 82, 88B89 (Tex. App.CHouston [1st
Dist.] 2000, pet. ref=d) (holding, in en banc opinion, that Rule
13.1 is void because it conflicts with section 52.046 and because delegation of
rulemaking authority to courts does not authorize courts to promulgate rules
that conflict with the substance of existing statutes); contra Smith
v. State, 114 S.W.3d 66, 70 & n.1 (Tex. App.CEastland 2003,
pet. ref=d) (concluding
that Rule 13.1 is not void); Brosette v. State, 99 S.W.3d 277, 284B85 (Tex. App.CTexarkana 2003,
pet. dism=d) (same); Tanguma v. State, 47 S.W.3d 663, 670B71 (Tex. App.CCorpus Christi
2001, pet. ref=d) (same), disapproved in part on other grounds by
Valle v. State, 109 S.W.3d 500, 508B09 (Tex. Crim.
App. 2003).  The Holten court mentioned and relied on the change in the
Texas Rules of Appellate Procedure reflected by Rule 13.1; however, the
Holten court did not mention or address the conflict between this rule and
section 52.046 of the Government Code.  See Holten, 168 S.W.3d at 784. 
Nor did the Holten court mention or address the split among the courts
of appeals as to whether Rule 13.1 is void, and, to date, the Texas Supreme
Court has not resolved this issue.  See id.  

On the other hand, this court did address this issue in Nabelek,
and its opinion in that case does not support the majority=s reliance today
on Rule 13.1.  In Nabelek, the appellant asserted that there was
reversible error based on the court reporter=s failure to
record a pretrial hearing, as required by Rule 13.1.  See Nabelek, CS.W.3d at C, 2005 WL 2148999,
at *5.  The Nabelek court stated that, under Rule 33.1, parties
generally have to preserve error regarding their appellate complaints by
presenting them to the trial court and obtaining an adverse ruling.  See id. 
The Nabelek court then stated as follows:








Likewise, Texas Government Code section 52.046, which sets forth the
general powers and duties of court reporters, provides that a party must
request a court reporter to make a record of proceedings.  Tex. Gov=t Code Ann. ' 52.046(a)(2) (requiring court reporter to attend
court and make a record A[o]n request@); see Polasek v. State, 16
S.W.3d 82, 88B89 (Tex. App.CHouston [1st Dist.] 2000, pet. ref=d) (holding rule 13.1(a) void and
proper rule stated by  Texas Government Code section 52.046(a)).  Here,
contrary to Nabelek=s assertions, the record does not
show he requested that the court reporter record the September 13, 2002 hearing
. . . By failing to request that the court reporter record the hearing or object
to the reporter=s failure to record . . . Nabelek
has failed to preserve these issues for review. 

Id. (footnotes
omitted).  The Nabelek court stated that Rule 33.1 requires preservation
of error as to appellate complaints and that, likewise, section 52.046 of the
Texas Government Code requires parties who want a record made to request the
court reporter to make one.  But section 52.046 only requires this request if
Rule 13.1 is void, as appellate courts in Houston and Dallas have held. See
Langford, 129 S.W.3d at 139; Polasek, 16 S.W.3d at 88B89.  If Rule 13.1
is valid, then no request for a court reporter would be necessary.  Rather than
give effect to Rule 13.1, the Nabelek court simply cited with approval
the First Court of Appeals=s en banc holding in Polasek that
Rule 13.1 is void.  The Nabelek court emphasized that Nabelek did not
request the court reporter to make a record and stated in passing that Nabelek
also failed to object to the court reporter=s failure to make
a record.  However, if Rule 13.1 is valid rather than void, then all the Nabelek
court had to do was note that no objection was made to the failure to record
the pretrial hearing; there would have been no need to note section 52.046=s requirement that
a record be requested or to cite with approval Polasek=s holding that
Rule 13.1 is void.  The Nabelek court based its conclusion that Nabelek
failed to preserve error on his failure to request a record as required by
section 52.046, thus indicating that Rule 13.1 is void.  See Nabelek, CS.W.3d at C, 2005 WL 2148999,
at *5. 








The majority does not explain why this court is not
following its own recent analysis in Nabelek.  Instead, the majority
erroneously concludes that the Nabelek court did not address the issue
of whether Rule 13.1 is void.  See ante at p. 12, n.9.  As discussed
above, the majority=s reading of Nabelek is incorrect. 
More critically, however, the majority does not say this court=s analysis in Nabelek
is unworkable or badly reasoned, only that the decision in the case turned on
preservation of error and not on the merits of the Rule 13.1 issue.  Even were
the majority correct in its assessment, that would hardly justify unexplained
inconsistency in this court=s analysis and decisions. 








Adhering to precedent fosters efficiency, fairness, and
legitimacy.  See Grapevine Excavation, Inc. v. Maryland Lloyds, 35
S.W.3d 1, 5 (Tex. 2000).  More practically, it results in predictability in the
law, which allows people to rationally order their conduct and affairs.  See
id.  Of course, there are times when continued application of a rule of law
no longer furthers the interests it once served and Athe general
interest will suffer less by such departure, than from a strict adherence.@  See  Lehmann
v. Har‑Con Corp., 39 S.W.3d 191, 215 (Tex. 2001) (quoting Benavides
v. Garcia, 290 S.W. 739, 740 (Tex. Comm=n App. 1927, judgm=t adopted).  In
those circumstances, courts may revisit a prior precedent, providing a higher
authority has not spoken on the subject.  Even then, courts should not lose
sight of the strong policies supporting the doctrine of stare decisis.  For
this reason, we are to adhere to settled rules of law Aunless there
exists the strongest reasons for chang[e].@  Benavides,
290 S.W. at 740B41.  When a court contemplates departing
from precedent, it should carefully balance the reasons proffered for rejecting
the precedent against the very weighty considerations underlying stare
decisis.  The majority offers no such analysis today.  Furthermore, even
presuming for the sake of argument that Nabelek says nothing about the
validity of Rule 13.1, today this court places importance on the change in the
law created by the promulgation of Rule 13.1.  Before doing so, the court ought
to address why it believes the en banc First Court of Appeals and the Dallas
Court of Appeals erred in holding that Rule 13.1 is void, and why this court
erred in citing this line of cases with approval.  See Nabelek, 
2005 WL 2148999, at *5; Langford, 129 S.W.3d at 139; Polasek, 16
S.W.3d at 88B89.  Because this court and others whose analysis this
court has followed have indicated that Rule 13.1 is void, the majority errs in
relying on Rule 13.1 to support its analysis.  See ante at pp. 5B6, 11B13.  

For all of these reasons, the Holten case is not on
point and does not impact the analysis in this case.  See id. 

Did the Individual Defendants verify a denial that they
were doing business as AW&F
Transportation@?








The majority concludes that the Individual Defendants filed
a verified denial of Cindy and Ricky=s allegation that
the Individual Defendants were doing business as AW&F
Transportation.@  The petition on which Cindy and Ricky
went to trial alleged that the Individual Defendants were Aindividuals doing
business as W&F TRANSPORTATION.@  Most of the
allegations in the petition refer to all three defendants collectively.  The Lease
Agreement attached to the petition is on the letterhead of AW&F
Transportation.@[8]  This agreement
describes the Lessee as AW&F Transportation,@ and E.H. Wilhelm=s signature is
next to the words ASIGNATURE OF THE LESSEE.@  The clerk=s record contains
the Individual Defendants= responses to requests for disclosure, in
which they state that the names of the parties to the lawsuit are AW&F
Transportation, Inc.[,] Elward & Margaret Wilhelm.@  In every
pleading and motion filed by the Individual Defendants in our record, they
describe the Individual Defendants as E.H. Wilhelm, Sr. and Margaret D.
Wilhelm.  The trial court=s judgment, the Individual Defendants= motion for
judgment notwithstanding the verdict, and the notice of appeal all denominate
the Individual Defendants in this manner as well.  

Texas Rule of Civil Procedure 93 requires a verified denial
of, among other things, the following matters:

2.  That . . . the defendant is not liable in the capacity in which he
is sued.

. . .

14.  That a party plaintiff or defendant is not doing business under an
assumed name or trade name as alleged.  

Tex. R. Civ. P. 93.








Cindy and Ricky=s live petition
asserted that the Individual Defendants were doing business as W&F
Transportation.  The evidence at trial showed that the Individual Defendants
filed a certificate with the Harris County Clerk showing that the Individual
Defendants were doing business under the assumed name of AW&F
Transportation.@[9]  Many of the
exhibits admitted into evidence at trial referred to the Individual Defendants= business as AW&F
Transportation.@  In the answers on which they went to
trial, the Individual Defendants asserted verified denials of various matters,
including that the agreement attached to the petition is their written
agreement or was executed by them.  They also asserted a verified denial that
they were liable in the capacity in which they were sued.  They did not,
however, assert a verified denial that they were doing business as AW&F
Transportation.@








The majority concludes that the verified denial as to
capacity is sufficient to deny the allegations that they were doing business as
AW&F
Transportation.@  However, a review of the petition shows
that Cindy and Ricky sought to hold the Individual Defendants liable in their
individual capacities.  To this end, Cindy and Ricky alleged, among other
things, that the Individual Defendants were doing business as AW&F
Transportation.@[10]  Following the
jury trial, the trial court granted judgment against the Individual Defendants
in their individual capacities and denied their motion for judgment
notwithstanding the verdict filed in their individual capacities.  The
Individual Defendants have appealed to this court in their individual
capacities.  Therefore, their denial that they were liable in the capacity in
which they were sued was a denial that they were liable in their individual
capacities rather than a denial that the Individual Defendants were doing
business as AW&F Transportation.@  Their intention
not to assert a verified denial of the latter is further corroborated by the
fact that the affidavits by which the Individual Defendants verified their
denials were executed by AW&F Transportation By:  E.H. Wilhelm
Sr.@ and by AW&F
Transportation By:  Margaret Wilhelm.@  Therefore, the
Individual Defendants= verification of their answers was an act
of doing business as W&F Transportation rather than a denial that the
Individual Defendants were doing business in this name.

By failing to verify by affidavit a denial of Cindy and
Ricky=s allegations that
they were doing business as AW&F Transportation,@ the Individual
Defendants failed to deny this matter, which was admitted by operation of law
without the necessity of proof.  See Tex.
R. Civ. P. 93 (5), (14); Rhodes v. City of Austin, 584 S.W.2d
917, 924 (Tex. Civ. App.CTyler 1979, writ ref=d n.r.e.); Condry
v. Mantooth, 460 S.W.2d 513, 516 (Tex. Civ. App.CHouston [1st
Dist.] 1970, no writ).  Therefore, the Individual Defendants are individually
liable for all the liability of W&F Transportation.  See, e.g., A to Z
Rental Ctr. v. Burris, 714 S.W.2d 433, 436 (Tex. App.CAustin 1986, writ
ref=d n.r.e.) (holding
that person doing business as AB&S Construction@ was individually
liable for obligations of AB&S Construction@).  Thus, in
addition to failing based on the absence of a complete record, the Individual
Defendants= challenges in the third and fourth issues also lack
merit because the charge submitted the liability of the Individual Defendants
doing business as AW&F Transportation.@  Accordingly, the
court should overrule the third and fourth issues. 








Instead of overruling these issues, the court sustains them
(as to the Individual Defendants) based on its erroneous conclusion that the
verified denial as to capacity was sufficient to deny the assumed-name
allegation.  See ante at pp. 19B20.  The majority
relies on a Texas Supreme Court case which states that, A[i]f the jury
finding is ambiguous or unclear, the courts must try to interpret the finding
so as to uphold the judgment.@  First Fed. Sav. & Loan Ass=n of Dallas v.
Sharp, 359 S.W.2d 902, 903 (Tex. 1962); see ante at p. 16. One
obvious way to interpret the jury=s findings to
uphold the trial court=s judgment would be to conclude that AW&F
Transportation@ includes the Individual Defendants because they
admitted they were individuals doing business as AW&F
Transportation@ and because the jury had before it a certificate so
stating.  The court indicates that the Individual Defendants ceased doing
business as AW&F Transportation@ in the past and
that all recent transactions and references were clearly to the corporation.  See
ante at pp. 18B20.  This conclusion is not supported by
the record, and furthermore, counsel for the W&F Parties stated during the
charge conference that the Individual Defendants Ahave a corporation
and they have an assumed name with other records still out with W&F
TransportationCtheir heading is W&F Transportation.@  Thus, counsel
for the W&F Parties admitted at trial that the Individual Defendants were
still doing business as AW&F Transportation.@  This court
should interpret the jury findings as assessing liability as to the Individual
Defendants based on their admission (both by their failure to file a verified
denial and by counsel=s statements at the charge conference)
that they were individuals doing business as AW&F Transportation@  and based on the
assumed name certificate.  This court errs by concluding that Ait is clear to us
that the jury=s findings as to >W&F
Transportation= referred to W&F Transportation, Inc.@[11]  Ante at
p. 17. 

                                                      Conclusion








Under the applicable common-law rule, this
court should presume that the omitted portions of an incomplete trial record
are relevant to the appellate issues and support the trial court=s judgment because
the common-law presumption has not been reversed by a recognized exception to
this rule.  The court errs in declining to do so and instead creating an
exception to the general rule for unrecorded closing arguments.  Likewise, the
court also errs by failing to interpret the jury=s findings so as
to uphold the trial court=s judgment and in concluding that the jury
could not possibly have understood AW&F Transportation@ to include the
Individual Defendants. Applying existing law, this court should overrule the
third and fourth issues based on the common-law presumption and, in the
alternative, on the Individual Defendants= failure to deny
Cindy and Ricky=s allegations that the Individual
Defendants were doing business as AW&F
Transportation.@  For these reasons, the court should overrule the motion for
rehearing in its entirety and affirm the trial court=s judgment. 

 

 

/s/      Kem Thompson
Frost

Justice

 

 

Judgment rendered and Memorandum Opinion of March 24, 2005,
Withdrawn, and Majority and Dissenting Opinions on Rehearing filed October 5,
2006.

 

Panel consists of
Chief Justice Hedges and Justices Frost and Guzman. (Hedges, C.J., majority).









[1]  The existence of the general common-law rule is
reflected in the language of Rule 34.6(c) itself.  That rule states that, in an
appeal under Rule 34.6(c), A[t]he appellate
court must presume that the partial reporter=s
record designated by the parties constitutes the entire record for
purposes of reviewing the stated points or issues.@  See Tex.
R. App. P.  34.6(c)(4) (emphasis added).  Rather than stating that the
portions of the record not included in the reporter=s record are presumed not relevant to the appeal, the
rule states that the partial record is presumed to be complete.  See id.  In
using this language, the Texas Supreme Court recognized the general common-law
rule that appellate review of a complete record of the trial proceedings is the
norm.    





[2]  Throughout this opinion, the word Arecord@ means Amake a record of.@ 
This term is intended to cover the making of a record in general, regardless of
whether the record is made stenographically, electronically, or otherwise. 





[3]  The W&F Parties also assert that a conclusion
that the record is not complete would violate the plain meaning of Rule 13.1(a)
that allows parties to agree not to record closing arguments.  The court seems
to agree.  See ante at pp. 5B6,
11B13.  Though Rule 13.1(a) allows the parties to agree
that closing arguments, or any other parts of the trial, should not be
recorded, that rule does not address the consequences of such an agreement. 
Therefore, there is no conflict between Rule 13.1(a) and the common-law rule as
to the ramifications of an incomplete record.





[4]  The majority erroneously states that the approach
taken by this dissent requires parties who appeal to produce a record of
everything that occurred at trial.  See ante at p. 12, 14. This dissent
does not require parties who appeal to produce such a record, and these parties
are free to use Rule 34.6(c) to avoid the inefficiency of transcribing parts of
the trial record that are not needed to resolve the appellate issues.  See
Tex. R. App. P. 34.6(c). 





[5]  The W&F Parties assert on rehearing that this
court=s original opinion presumed that counsel=s closing arguments might have contained evidence that
would support the judgment.  It is not presumed that counsel=s closing arguments constitute evidence, nor did the
original opinion so state.





[6]  Though in the majority opinion the court relies on
Rule 34.1, that rule does not state when a reporter=s record is necessary.  See Tex. R. App. P. 34.1; ante at p.
12. 





[7]  Two amici curiae have filed a brief in which they
cite five cases in support of the proposition that, even absent the application
of Rule 34.6(c), the trial record is complete without a record of the closing
arguments.  These cases do not change either the analysis or the conclusion.

 

In Stubbs v. Stubbs, the Texas Supreme Court
held that the failure to record proceedings at trial in violation of the Texas
Family Code constitutes error on the face of the record in support of a
writ-of-error appeal.  See 685 S.W.2d 643, 644B46 (Tex. 1985).  While the Stubbs court stated
that the failure to record oral testimony violated a section of the Family Code
regarding the making of a record of all trial court proceedings, the Stubbs
court was not required to and did not address whether a failure to record
matters at trial other than oral testimony would violate this statute.  See
id.  In an unpublished opinion in what appears to be a writ-of-error
appeal, the Heimendinger court held that the appellant did not show on
the face of the record that the trial court violated her due process rights in
not recording voir dire, bench conferences, or closing arguments, in a case in
which the appellant did not allege any other error by the trial court.  See
Heimendinger v. Tex. Dep=t of
Prot. & Reg. Servs., No.
03-97-00079-CV, 1999 WL 274061, at *1B2
(Tex. App.CAustin May 6, 1999, pet. denied) (not designated for
publication).  The Heimendinger court=s
obiter dictum that the Stubbs court interpreted the Family Code to mean
that all oral testimony must be recorded does not address whether a record is
complete without closing arguments.  See id.  In the unpublished Tovar
v. Mazza opinion, the court mentions the absence of voir dire, closing
arguments, and the trial exhibits from the record and concludes that the court
need not decide the effect of this incomplete record.  See No.
04-98-00387-CV, 1999 WL 174064, at *1B2
(Tex. App.CSan Antonio Mar. 31, 1999, no pet.) (not designated
for publication).  Therefore, the statement in the majority opinion that the Tovar
court  Adeclined@ to
apply the common-law presumption is correct only to the extent that the court
stated that it did not need to address whether the common-law presumption
applied in that case.  See id; ante at p. 10.

 

In Tenngasco Gas Gathering Co. v.
Fischer, the Corpus Christi Court of Appeals affirmed the trial court=s judgment in a condemnation case.  See 653
S.W.2d 469, 471 (Tex. App.CCorpus Christi
1983, writ ref=d n.r.e.).  In that case, through no fault of the
parties, the latter part of the trial, including the rebuttal evidence and
closing arguments, was not recorded because the court reporter suffered a
nervous breakdown.  See id. at 471B72. 
The court stated that this incomplete statement of facts was made complete by
the trial court=s certification of a narrative statement of the
testimony of one witness.  See id. at 473.  The court then addressed the
rest of the appeal, concluding (1) the trial court did not err in admitting
certain testimony; (2) the evidence was sufficient to support the jury=s verdict; and (3) the condemnor had the right of
eminent domain.  See id. at 473B76. 
On rehearing, the court stated that the absence from the statement of facts of
certain rebuttal testimony and the closing arguments, which was not the subject
of the trial court=s certification, did not cause the court to depart
from its original opinion, in part because there was no appellate issue
relating to closing arguments.  See id. at 476.  The Fischer
court did not discuss the cases regarding the presumption that omitted portions
of the trial record support the trial court=s
judgment, and, in any event, its judgment affirming the trial court is
consistent with these cases.  See id.  Furthermore, Fischer
involved a different situation in which the incomplete record did not result
from the agreement or request of the parties but from a circumstance beyond the
parties= control.  See id. at 471B72.  In In re M.S., a mother whose parental
rights had been terminated asserted that her trial counsel was ineffective in
failing to have a record made of voir dire, the charge conference, and closing
arguments and that this failure harmed her because it made it more difficult for
her to prove ineffective assistance of counsel.  See 115 S.W.3d 534, 545B46 (Tex. 2003).  The Texas Supreme Court concluded
that the mother had not shown any harm from her counsel=s alleged ineffectiveness in failing to object to the
failure to record voir dire, the charge conference, and closing arguments.  See
id.  These five cases are not relevant or persuasive as to the issues in
the instant case.





[8]  Texas corporations are required to have in their
names one of the following words or an abbreviation thereof: Acorporation,@ Acompany,@ Aincorporated,@ or
Alimited.@  Tex. Bus. Corp. Act. art. 2.05(A)(1)
(Vernon 2003).  One of the reasons for this requirement is to alert those doing
business with the corporation to the fact that they are doing business with an
incorporated entity.  See Lassiter v. Rotogravure Comm., Inc., 727
S.W.2d 8, 10 (Tex. App.CDallas 1986, writ ref=d n.r.e.).  In the majority opinion, the court concludes that
references to AW&F Transportation@ are clearly references to AW&F
Transportation, Inc.@  See ante at p. 17. This interpretation is far
from obvious and is contrary to the way terms are typically viewed and
understood in Texas law.  In fact, given the Texas framework and nomenclature
for corporate entities, it is more likely that AW&F Transportation@ would be
interpreted as a reference to the Individual Defendants= unincorporated proprietorship, especially in light of
their assumed-name certificate which was in effect at all material times and
which was never abandoned or withdrawn.  The court also states without
explanation that counsel for all parties and all of the witnesses referred to AW&F Transportation, Inc.@ as AW&F
Transportation.@  While there are many references to AW&F Transportation@ in the record, in most cases it is not clear whether the speaker is
referring to the corporation or the assumed name for the unincorporated
proprietorship.  The court appears to presume without justification that all of
these references are to the corporation. 





[9]  The court seems to imply that creating a corporation
with a name similar to a previously unincorporated business run by the owners
of the new corporation automatically destroys the unincorporated business and
precludes the principals from ever doing business as the unincorporated
entity.  See ante at pp. 18B20
& n.15.  This is not the law.  See, e.g., Rehab 2112, L.L.C. v. Audio
Images Int=l, Inc.,168
S.W.3d 308, 311 (Tex. App.CDallas 2005, no
pet.) (holding that trial court could render judgment against defendant doing
business under assumed names ANorth Texas MRI@ and AWhite Rock MRI,@ despite the contemporaneous existence of limited
liability companies whose names contained the same words followed by AL.L.C.@).  The court
asserts that the First Court of Appeals, in Negrini v. Plus Two Advertising,
Inc., held that an assumed name certificate did not provide a basis for
establishing individual liability after an entity became incorporated.  See
ante at p. 19, citing 695 S.W.2d 624, 631 (Tex. App.CHouston [1st Dist.] 1985, no writ).  The Negrini court
simply concluded, under the facts shown by the record from the bench trial,
that the assumed-name certificate in question was not legally sufficient
evidence to prove all the essential elements of a general partnership between
the parties who signed the certificate.  See Negrini, 695 S.W.2d at 631.





[10]  The majority opinion states that, during the charge
conference, the parties discussed the fact that the court=s charge referred to W&F Transportation, Inc.  See
ante at p. 17, n.12. This is not correct.  Counsel for Cindy and Ricky
never stated that the charge referred to W&F Transportation, Inc., and the
court never indicated that the charge referred to W&F Transportation, Inc. 
In fact, when counsel for the W&F Parties requested a jury instruction that
the charge only referred to the corporate defendant, counsel for Cindy and
Ricky objected and indicated that the jury charge covered all three
defendants.  A review of the record of the charge conference shows that the
only objection the W&F Parties distinctly pointed out to the trial court in
this regard was their objection that the charge did not define AW&F Transportation@ to mean AW&F Transportation, Inc.@ See Tex.
R. Civ. P. 274 (stating that A[a]
party objecting to a charge must point out distinctly the objectionable matter@).  Therefore, this is the only charge objection as to
which the W&F Parties preserved error.  See id.  





[11]  The W&F Parties assert that Perez v.
Weingarten Realty Investors is on point.  See 881 S.W.2d 490, 493B94 (Tex. App.CSan
Antonio 1994, writ denied).  That case did not involve a partial record, and it
affirmed the trial court=s refusal to submit questions proposed by the
plaintiff because they did not contain substantially correct wording.  See
id. The Perez case is not on point.